Serena SALE, Plaintiff–Appellant,

v.

Eric SLITZ and Reed Millard Services, INC.,[1] Defendants–Respondents.

No. 22722.

Missouri Court of Appeals,
Southern District,
Division Two.

July 28, 1999.

Motion for Rehearing and Transfer to Supreme Court Denied Aug. 18, 1999.

Application for Transfer Denied
Sept. 21, 1999.

1. This caption reflects that contained in the record and briefs filed herein, although in both Appellant's and Respondents' briefs it is noted that Eric Slitz should be "Eric Slater," and Reed Millard Services, Inc.is misspelled and should be "Reid Millard Services, Inc."

Henry T. Vogt, St. Louis, for appellant.

Mark G.R. Warren, David G. Bandre', Jefferson City, for respondents.

JAMES K. PREWITT, Judge.

Plaintiff appeals from the trial court's judgment dismissing her "Petition for Damages." Following argument on Defendants' motion to dismiss, the trial court entered judgment, reciting that "the court sustains the motion and dismisses this cause for failure to state a claim."

The judgment is inconsistent with the announcement of the court during the arguments on the motion to dismiss. During that argument, the trial judge stated that Plaintiff's petition contained "enough allegations, even in a fact pleading state, to allege a legitimate cause of action." Thereafter, the trial court heard arguments regarding the effect of an exculpatory clause in a contract signed by Plaintiff, and the court announced that it was of "the opinion that the exculpatory clause bars a cause of action for negligence, for simple negligence." The contract was not a part of Plaintiff's petition, although it was referred to therein. It was presented to the court through a stipulation of the parties.

## I.

### Standard of Review

The above leads to a dispute between the parties as to how we should review this matter. Plaintiff contends that it should be reviewed as a summary judgment because when the parties introduce evidence

beyond the pleadings a motion to dismiss is converted to a motion for summary judgment, citing Rule 55.27(a). A portion of that rule provides:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04, and all parties should be given reasonable opportunity to present all material made pertinent to such a motion by Rule 74.04.

■ Defendants appear to us to be taking an inconsistent position, as they contend that review should be on a motion to dismiss, yet they rely on a provision in the contract not a part of, or referred to, in Plaintiff's petition. A motion to dismiss for failure to state a cause of action is a test of the adequacy of the plaintiff's petition. *Geiger v. Bowersox,* 974 S.W.2d 513, 515 (Mo.App.1998). In reviewing dismissal pursuant to a motion to dismiss, an appellate court considers the facts set forth in the petition to determine the validity of the trial court's ruling. *Id.*

■ In reviewing the trial court's dismissal pursuant to a motion to dismiss for failure to state a claim upon which relief can be granted, an appellate court must "glean the facts on appeal from plaintiff's petition." *Jackson v. Christian Hospital Northeast–Northwest,* 823 S.W.2d 137 (Mo. App.1992).

■ In the interest of judicial economy, we review this matter as a summary judgment, deciding if the petition stated a claim for which relief can be granted, and, if so, whether that claim was barred by the exculpatory clause in the contract. To only decide if the petition states a claim might necessitate another appeal regarding the exculpatory clause.

Review in such manner is consistent with holdings that state that a motion to dismiss is ordinarily confined to the pleadings and construed in the light favorable to plaintiff, but when matters outside the pleadings are considered and not excluded by the court, the trial court shall treat the motion to dismiss as one for summary judgment. *See, e.g., Gardner v. City of Cape Girardeau,* 880 S.W.2d 652, 654 (Mo. App.1994). It is also true that in such a situation, the parties must be given notice and reasonable opportunity to present relevant summary judgment material. *Id.* However, here, the parties by their agreement went beyond Plaintiff's petition and, in effect, asked the court to treat the motion to dismiss as a motion for summary judgment and, at least according to the transcript, the trial court did so.

■ Notice by the trial court is not required where a party or parties acquiesced in the trial court treating a motion to dismiss as a motion for summary judgment. *Keim v. Big Bass, Inc.,* 949 S.W.2d 122, 124–25 (Mo.App.1997). Where the parties introduce evidence, as they did here, beyond that contained in the petition, a motion to dismiss the petition is converted to a motion for summary judgment and the parties are charged with knowledge that the motion was so converted. *Gangwere v. Bischoff,* 935 S.W.2d 783, 784 (Mo.App.1996). Notice was not required and would not have accomplished anything, as it was the parties themselves, by their stipulation, who asked the trial court to consider matters beyond the petition.

Review on appeal of summary judgment is essentially *de novo. Ribaudo v. Bauer,* 982 S.W.2d 701, 703 (Mo.App.1998). The propriety of summary judgment is a matter of law and the appellate court does not

defer to the trial court's decision. *Id.* The record is reviewed in the light most favorable to the party against whom judgment was entered. *Id.* Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

## II.

### Does petition state a claim for which relief can be granted?

■ Plaintiff's claim against Defendants arises from Defendants' failure to produce and deliver her deceased husband's cremated remains. Plaintiff alleged she arranged with Defendants on October 9, 1995, "for the purchase of funeral goods and services, including the delivery of the cremated remains of Milton Sale to the Rader Methodist Church between Vienna and Freeburg, Missouri." Milton Sale, her husband, died the next day. Plaintiff alleges in her petition that because of Defendants' failure to perform their duties: she was unable to obtain a American flag for her husband's memorial service (which must be requested by a funeral home); that her husband's body has not been disposed of as desired; that the remains had not been delivered and Plaintiff was unable to have memorial services; and that Plaintiff has suffered great emotional and mental anguish. Plaintiff also contends that Defendants' conduct was "willful, wanton, and malicious and with total disregard to the consequences of their acts," and, therefore, punitive damages should be awarded.

■ We conclude that a claim for which relief can be granted is stated after we give the petition the broadest intendment and treat all facts alleged as true, construing all allegations favorable to Plaintiff. *See Williams v. Belgrade State Bank,* 953 S.W.2d 187, 189 (Mo.App.1997).

■ Plaintiff contends that the petition states a clause of action under the common law right of sepulchre, which cases say is the "right of the next of kin to perform a ceremonious and decent burial of the nearest relative – and an action for the breach of that right." *Galvin v. McGilley Memorial Chapels,* 746 S.W.2d 588, 591 (Mo.App.1987). The gist of the cause of action is the emotional distress and anguish to the nearest kin from mistreatment of the body. *Id.* The basis of the cause of action for interference with the right of sepulchre is the mental anguish experienced by the person claiming the right of sepulchre. *Lanigan v. Snowden,* 938 S.W.2d 330, 332 (Mo.App.1997).

In *Riley v. St. Louis County of Missouri,* 153 F.3d 627, 630 (8th Cir.), *cert. denied,* 119 S.Ct. 1113 (1999), the court determined that a deceased's mother was not deprived of her right of sepulchre where plaintiff "did not allege any physical insult to the deceased nor any interference with the visitation, funeral, or burial." The court further stated that "Missouri courts base the cause of action on the mental anguish of the person claiming the right of sepulchre." *Id.*

Here, there are allegations that Defendants' acts or omissions interfered with the funeral service, causing her mental anguish. The petition, on its face, states a claim for which relief can be granted.

## III.

### Is the claim barred by the exculpatory clause?

■ The agreement signed by Plaintiff was entitled "**FUNERAL PURCHASE CONTRACT.**" A clause on the first of its two pages, above the signature lines, stated: " ... SEE OTHER SIDE FOR THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING DISCLAIMER OF WARRANTIES AND LIMITATION OF REMEDIES, THAT ARE PART OF THIS AGREEMENT...." In an affidavit of Plaintiff filed before the hearing on the motion to dismiss, and referred to by both Plaintiff and Defendants in argument before the trial court and in their briefs filed herein,

Plaintiff stated that she did not read the back of the contract; she was not told to read the back of it; she was not told she was waiving any rights by signing the contract; and she was told that she "was required by law to sign the contract." On the second, or reverse, side, the language upon which Defendants rely is in the fifth of fifteen paragraphs:

LIMITATION OF DAMAGES AND REMEDIES: By signing this Agreement, you expressly waive, and you agree that you shall not be entitled to recover, damages or losses of any kind, whether direct or consequential, based on negligence. You further acknowledge and agree that emotional distress will not be one of the claimed items of damage for any breach of contract.[2]

The second sentence above quoted can be disregarded, as we agree with the trial court that the petition, although not altogether clear, sets forth a cause of action in tort. It is also clear that if Plaintiff can prove, as she alleged, that Defendants' conduct was willful and wanton, this provision will not bar her claim. A limitation of liability provision within a contract is ineffective in a cause of action where the conduct is willful and wanton. *Khulusi v. Southwestern Bell Yellow Pages, Inc.*, 916 S.W.2d 227, 230 (Mo.App.1995). In *Alack v. Vic Tanny International of Missouri, Inc.*, 923 S.W.2d 330, 337 (Mo.banc 1996), the court stated that "there is no question that one may never exonerate oneself from future liability for intentional torts or for gross negligence, or for activities involving the public interest."

We now consider whether this provision bars a claim for negligence. Although disfavored and strictly construed, releases of future negligence are not void as against public policy. *Warren v. Paragon Technologies Group, Inc.*, 950 S.W.2d 844, 845 (Mo.banc 1997). To release a

party from its own future negligence, exculpatory language must be "clear, unambiguous unmistakable, and conspicuous." *Id.* In *Alack*, 923 S.W.2d at 334, the court stated:

Although exculpatory clauses in contracts releasing an individual from his or her own future negligence are disfavored, they are not prohibited as against public policy. [Citation omitted.] However, contracts exonerating a party from acts of future negligence are to be "strictly construed against the party claiming the benefit of the contract, and clear and explicit language in the contract is required to absolve a person from such liability." [Citation omitted.] It is a "well-established rule of construction that a contract provision exempting one from liability for his or her negligence will never be implied but must be clearly and explicitly stated." [Citation omitted.]

*Alack* states, *at* 337, that it requires:

[C]lear, unambiguous, unmistakable, and conspicuous language in order to release a party from his or her own future negligence. The exculpatory language must effectively notify a party that he or she is releasing the other party from claims arising from the other party's own negligence.

The court in *Alack*, 923 S.W.2d at 333, described the "Retail Installment Contract" containing Paragraph G, the provision in question:

All seventeen of the paragraphs on the form-contract were printed with the same-sized lettering. Nothing made Paragraph G, or any of the language contained therein, conspicuously stand out. Alack signed the contract near the bottom of the first page. Paragraph G was on the back side of the contract.

The court ruled that the clause in *Alack* did not effectively bar the claim and

---

**2.** All paragraphs have a heading in upper case, bold type with the remainder in regular type, with the exception of the fourth para-

graph which is entirely in upper case, bold type. As best we can tell from the copy in the record, the type is 8 point.

was ambiguous "because it did not specifically state that a member was releasing Vic Tanny for its own future negligence." *Id.* "There must be no doubt that a reasonable person agreeing to an exculpatory clause actually understand what future claims he or she is waiving." *Id.* at 337–38.

Here, Plaintiff was anticipating the death of her husband, which occurred the next day. The language in question, or the possible effect of it, was not expressly brought to her attention. The exculpatory clause is on the reverse side of the contract and is located among fourteen other paragraphs. *Alack* requires that such a provision be "conspicuous" to be enforceable. 923 S.W.2d at 337. The location of the clause leads us to conclude that the purported release was not conspicuous.

Defendants also argue that there is no cause of action under the contract, as no delivery date was stated in it. Defendants state that "[a]n examination of the record makes it patently clear that the forwarding of the cremains to Appellant was in no way governed by the contract." If so, then the exculpatory clause would not apply to a separate obligation to deliver the remains. Defendants appear to acknowledge, or at least acknowledge that the petition states, that there was an obligation to deliver the cremated remains. If that was not an obligation under the contract, as Defendants assert, then the clause in the contract could hardly have barred a claim for failing to so deliver. At best, it could be said that the contract would be ambiguous as to whether the exculpatory clause would bar a claim based on an action beyond the contract.

### Conclusion

We conclude that the petition stated a claim for which relief can be granted under the common law right of sepulchre. Further, we decide that the exculpatory clause in the contract does not bar such a claim.

The judgment is reversed and the cause remanded for further proceedings.

GARRISON, C.J., and BARNEY, J., concur.