Calton C. GREEN, et al., Appellants,

v.

**LEBANON R–III SCHOOL DISTRICT,**
**et al., Respondents.**

Liston King, et al., Appellants,

v.

**Morgan County R–II School District,**
**et al., Respondents.**

Nos. SC 81758, SC 81746.

Supreme Court of Missouri,
En Banc.

March 7, 2000.

Rehearing Denied April 4, 2000.

Craig S. Johnson, Matthew D. Turner, Jefferson City, for appellants in Nos. SC 81758 and SC 81746.

Alex Bartlett, Nancy Ripperger, Jefferson City, G. Stanley Moore, Lebanon, for respondents in No. SC 81758.

Alex Bartlett, Nancy Ripperger, Jefferson City, Stephen Concannon, Morgan County Pros. Atty., Versailles, for respondents in No. SC 81746.

ANN K. COVINGTON, Judge.

Calton C. Green, et al., and Liston King, et al. (the taxpayers),[1] owners of real property in the Lebanon R–III and Morgan County R–II School Districts, brought suit to challenge the operating levies of the school districts (the schools) for the years 1994, 1995, 1996, 1997, and 1998. The taxpayers contend that the schools erroneously determined the highest rate of tax they could levy without additional voter approval, resulting in a tax rate for each of the years at issue that violated provisions of section 137.073, RSMo,[2] and article X, section 22(a) of the Missouri Constitution. The taxpayers asked the court to declare the schools' levies unlawful, requested injunctive relief requiring the schools to return excessive funds, and sought damages. The taxpayers named as additional defendants various county officials within each school district and certain members of the two school boards in their individual capacities. The circuit court dismissed the individually named school board members. The circuit court entered summary judgments in favor of the schools and, in the alternative, sustained the schools' motions to dismiss for failure to state a claim. The judgments are affirmed in part and reversed in part and the causes remanded. The appeals are consolidated because of common issues of law and fact.

As a preliminary matter, certain explanations are helpful with respect to the opinion in general. To the extent that there exist methods of calculating more than one tax rate "ceiling" or "lid," this Court uses the term "highest lawful levy" to describe that rate above which a school district may not levy, taking into account all relevant ceilings or lids under Missouri law. A tax levy is an amount owed for each $100.00 of assessed property valuation. The state auditor is charged with verifying that a school district's highest lawful levy for each year complies with section 137.073, RSMo. *See* section 137.073.6, RSMo. The state auditor developed a set of forms for the benefit of school districts to determine the highest lawful levy in a manner purportedly consistent with both section 137.073, RSMo, and article X, section 22. *See* 15 CSR 40–3.100.[3] The Missouri State Board of Education publishes its own separate listing of maximum levy amounts for each year in the annual *Report of the Public Schools of Missouri*. *See* section 161.092(10), RSMo.

The remaining facts relevant to this case are derived from the pleadings. The taxpayers' petitions rely upon the state auditor's results. The taxpayers allege that the highest lawful levy for the Lebanon R–III School District should have been: $2.16 in 1994, $2.19 in 1995, $2.20 in 1996, $1.98 in 1997, and $1.99 in 1998. In those years, the taxpayers claim the Lebanon R–III School District exceeded the established limits by imposing the following levies: $2.75 in 1994, 1995, and 1996; $2.61 in 1997; and $2.62 in 1998. Similarly, the taxpayers allege that the highest lawful

---

1. The taxpayers in both cases style their petitions as class actions. The trial court, however, did not certify a class of plaintiffs in either case, nor does the record indicate that any non-parties were given notice. *See* Rule 52.08(c). There is, therefore, no class of plaintiffs, and the taxpayers do not challenge that conclusion.

2. During the years at issue, there were two versions of the statutes in effect, found in

RSMo 1994 and RSMo Supp.1996. Accordingly, references to RSMo will state the specific year as appropriate, or no year when referring to any section generally.

3. During the years at issue, there were four versions of the relevant regulation and accompanying forms, with the following effective dates: August 6, 1992; November 30, 1994; June 24, 1996; and November 30, 1996.

levy for the Morgan County R–II School District should have been: $2.13 in 1994, $2.19 in 1995, $2.17 in 1996, $2.02 in 1997, and $2.04 in 1998. In those years, the taxpayers allege that the Morgan County R–II School District exceeded the established limits by imposing the following levies: $2.75 in 1994, 1995, and 1996; and $2.55 in 1997 and 1998.[4] The schools assert, using the state board's amounts, that the highest lawful levy for all of the relevant years was $3.59 for the Lebanon R–III School District and $3.15 for the Morgan County R–II School District.

■ At issue in the taxpayers' first point on appeal is the method for determining the highest lawful levy that a school board may approve, taking into account the terms "maximum authorized current levy," as used in article X, section 22(a) of the Missouri Constitution, and "tax rate ceiling," as used in section 137.073.1(3), RSMo.[5]

Article X, section 22(a) of the Missouri Constitution, a portion of the constitution commonly referred to as the "Hancock Amendment," provides:

(a) Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. If the definition of the base of an existing tax, license or fees, is broadened, the maximum authorized current levy of taxation on the new base in each county or other political subdivision shall be reduced to yield the same estimated gross revenue as on the prior base. If the assessed valuation of property as finally equalized, excluding the value of new construction and improvements, increases by a larger percentage than the increase in the general price level from the previous year, the maximum authorized current levy applied thereto in each county or other political subdivision shall be reduced to yield the same gross revenue from existing property, adjusted for changes in the general price level, as could have been collected at the existing authorized levy on the prior assessed value.

Only the last sentence of article X, section 22(a) is at issue in this case. It requires annual adjustments to the "maximum authorized current levy" under certain circumstances, taking into account the finally equalized assessed valuation of property, the value of new construction and improvements, and the increase in the general price level. The maximum authorized current levy under article X, section 22(a) is the higher of the amount in effect at the time that section was adopted, November 4, 1980, or the highest amount approved by the voters since that date.

■ The schools, being the movants, bear the burden of establishing a right to summary judgment. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).[6] In response to the taxpayers' arti-

4. The taxpayers filed, in each case, a motion to file a supplemental legal file before this Court containing additional data. The motions are overruled because the data is not necessary to resolve the issue before the Court at this time.

5. The schools contend that the taxpayers' briefs do not comply with Rules 84.04(d) and 84.04(i). This Court concludes that the briefs substantially comply with the requirements of the rules.

6. The schools filed, in each of the cases below, a motion to dismiss for failure to state a claim. They attached to each motion the affidavit of Alex Bartlett, in which he lists the operating levies calculated by the Missouri State Board of Education for the years 1980 through 1983. Although the taxpayers filed, in each case, a motion to exclude Bartlett's affidavit, they attached to their suggestions in opposition to the schools' motions five exhibits of the schools' tax rate worksheets deriving

cle X, section 22 claim, the schools, in their motions ·for summary judgment, merely contended that the maximum authorized current levy for the years in question, unadjusted from year to year, was $3.59 for the Lebanon R–III School District, the rate in effect in that district on November 4, 1980, and $3.15 for the Morgan County R–II School District, a rate approved by the voters in that district in 1983. To obtain summary judgment against the taxpayers as to their article X, section 22(a) claims, however, the schools had the burden to establish that they were not required to make annual adjustments to the maximum authorized current levy under article X, section 22.[7] The schools failed to establish that annual adjustments were not required. As a consequence, they did not meet their burden to show that the maximum authorized current levy they alleged was correct under article X, section 22.

 The other of the taxpayers' claims invokes section 137.073, RSMo. Section 137.037.1(3), RSMo 1994, provided that:

> (3) "Tax rate ceiling," a tax rate as revised by the taxing authority to comply with the provisions of this section or when a court has determined the tax rate; except that, other provisions of law to the contrary notwithstanding, a school district may levy the operating levy for school purposes required for the current year under subsection 2 of section 163.021, RSMo [requiring an operating levy of $2.75 in order to obtain state aid beyond certain minimum amounts], if such tax rate does not exceed the highest tax rate in effect subsequent to the 1980 tax year. This is the maximum tax rate that may be levied, unless a higher tax rate ceiling is approved by voters of the political subdivision as provided in this section.

The section 137.073, RSMo, tax rate ceiling applies, therefore, to all political subdivisions but contains an option for school districts:

> other provisions of law to the contrary notwithstanding, a school district may levy the operating levy for school purposes required for the current year under subsection 2 of section 163.021, RSMo, if such tax rate does not exceed the highest tax rate in effect subsequent to.the 1980 tax year.

The amount "required" for 1994 under section 163.021, RSMo 1994, was $2.75. The "highest tax rate in effect subsequent to the 1980 tax year," without any adjustments, was $3.59 in the Lebanon R–III School District and $3.15 in the Morgan County R–II School District. Applying a plain meaning reading of the option for school districts, a tax rate ceiling under section 137.073, RSMo 1994, was $2.75 in 1994. Section 137.073, RSMo 1994, did not require any annual adjustments to the $2.75 result. In fact, section 137.073.3, RSMo 1994, provided in part that, "no school district shall be required to revise

---

the tax rate to be levied in the years 1994 through 1998. Rule 55.27(a) authorizes the conversion of a motion to dismiss into a motion for summary judgment when parties present to the trial judge materials outside the pleadings. The trial court applied Rule 55.27(a) and found that it had provided adequate notice to the parties during a conference that matters outside the pleadings would be considered. In addition, the parties acquiesced in the treatment of the schools' motions to dismiss as motions for summary judgment by providing to the trial court materials outside the pleadings. *See Sale v. Slitz,* 998 S.W.2d 159, 162 (Mo.App.1999). At the time the trial court entered summary judgment in the cases, the parties had not yet undertaken discovery.

7. The trial court stated that the· taxpayers insufficiently pleaded their computations for the amounts they alleged as the highest lawful levy. The taxpayers did, however, allege amounts for the highest lawful levy based on the state auditor's assessment and are entitled to put on their proof regarding the computation of those amounts. *See Fort Zumwalt Sch. Dist. v. State,* 896 S.W.2d 918, 922–923 (Mo. banc 1995); *Gladis v. Rooney,* 999 S.W.2d 288, 290 (Mo.App.1999) (reversing summary judgment entered based on the failure to state a claim).

its operating levy for school purposes below the rate required for the current year under subsection 2 of section 163.021, RSMo, if such tax rate does not exceed the highest tax rate in effect subsequent to the 1980 tax year." *See also* section 137.073.4, RSMo 1994. In 1994, both the Lebanon R–III and Morgan County R–II School Districts imposed a levy of $2.75. Neither levy violated section 137.073, RSMo 1994, for the 1994 tax year.[8] The same reasoning applies to the taxpayers' section 137.073 claims for the years 1995 and 1996.

Enactment of a 1996 amendment alters the analysis. With that amendment, the option in section 137.073.1(3) provides:

> other provisions of law to the contrary notwithstanding, a school district may levy the operating levy for school purposes required for the current year under subsection 2 of section 163.021, RSMo, *less all adjustments required pursuant to article X, section 22 of the Missouri Constitution,* if such tax rate does not exceed the highest tax rate in effect subsequent to the 1980 tax year.

Section 137.073.1(3), RSMo Supp.1996. (emphasis added). The revised statutory option specifies that, beginning in the 1997 tax year,[9] the schools must adjust the $2.75 levy "required" under section 163.021.2, according to the provisions of article X, section 22(a) of the Missouri Constitution. *See* sections 137.073.1(3), 163.021.2, RSMo Supp.1996. Similarly, section 137.073.3, RSMo Supp.1996, no longer stated that school districts shall not be required to revise their operating levies below the "required" amount listed in section 163.021.2, RSMo. *See also* section 137.073.4, RSMo Supp.1996.

In view of the 1996 amendments, therefore, the schools had the burden on their summary judgment motions to establish that they were not required to adjust the tax rate ceiling. The schools did not do so for the years 1997 and 1998. The schools, therefore, did not meet their burden on the taxpayers' claims based on section 137.073, RSMo Supp.1996, for the years 1997 and 1998.

Because in these summary judgment proceedings the burden is on the schools to show as a matter of law that they were entitled to summary judgment, the judgments must be reversed in part and the causes remanded. This is because the schools failed to prove that annual adjustments to the maximum authorized current levy were not required under article X, section 22(a) for the years 1994, 1995, 1996, 1997, and 1998, and because the schools failed to prove that annual adjustments were not required to the tax rate ceiling under section 137.073, RSMo, for the years 1997 and 1998.

The schools contend that the taxpayers cannot obtain refunds under section 137.073, RSMo, for two reasons not related to the merits, neither of which the trial court reached. First, the schools contend that, in order to obtain refunds under section 137.073, RSMo, the taxpayers should have filed suit in each of the years in question in the period after the schools assessed levies (in July or August of each year) but before the levies became due (on December 31 of each year). Second, the schools contend that the taxpayers are not entitled to refunds under section 137.073, RSMo, because the taxpayers did not pay their taxes under protest in the years in question, as described in section 139.031, RSMo. On remand, the trial court may determine whether refunds are permitted as a matter of law for each of the years in

---

8. The parties assume, without briefing or argument, that the 1994 law (S.B.676) amending section 137.073 – effective July 12, 1994 – applies to the 1994 tax year.

9. Both districts in this case set their 1996 levies before August 28, 1996. *See* sections 164.011 and 164.041, RSMo 1994. The 1996 amendment to section 137.073 – effective August 28, 1996 – does not apply to the 1996 tax year. *See Beatty v. State Tax Comm'n,* 912 S.W.2d 492, 496 & n. 1 (Mo. banc 1995).

question and whether requests for refunds were properly and timely asserted.

■ Finally, the schools contend that the taxpayers are not entitled to a refund for the 1998 tax year under either article X, section 22(a) or section 137.073, RSMo, because Constitutional Amendment Number 2 permits the levies in these cases. The amendment modified article X, section 11(b), which now reads,

> Any tax imposed upon such property ... shall not exceed the following annual rates [without a vote, as specified in article X, section 11(c) ]: ... For school districts formed of cities and towns, including the school district of the city of St. Louis – two dollars and seventy-five cents on the hundred dollars assessed valuation.

Section 11(b) addresses the amount of tax that a political subdivision may levy without voter approval. *See Three Rivers Junior College Dist. v. Statler*, 421 S.W.2d 235, 238–39 (Mo. banc 1967).

The amendment does not apply. School districts set the levies for 1998 not later than September 1, 1998. *See* sections 164.011.2, 67.110.1, RSMo. The voters did not adopt the amendment, however, until November 3, 1998, and the amendment did not become effective until December 3, 1998. Mo. Const. Art. XII, section 2(b). The schools set the 1998 levies and the levies became official, therefore, before the effective date of the amendment. If the school district imposed an unlawful levy for 1998, the later constitutional amendment did not ratify the earlier unlawful tax rate.

The schools contend that the amendment does apply because the taxes for the 1998 year were payable on December 31, 1998. The amendment, however, affects and concerns only the setting of the tax rate; it does not affect or concern the payment of tax. Although the taxes became payable after the effective date of the amendment, it does not serve to validate a tax rate set before the amendment

took effect. *See Southwestern Bell Tel. v. Mahn*, 766 S.W.2d 443, 445 (Mo. banc 1989). The schools' claim, therefore, is without merit.

In their second point relied on, the taxpayers claim that the trial court erred in dismissing the school board members from the suit.

■ As one basis for dismissal, the individual school board members claimed official immunity. The doctrine of official immunity recognizes that "society's compelling interest in vigorous and effective administration of public affairs requires that the law protect those individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business." *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831, 836 (Mo. banc 1985). Under the doctrine of official immunity, a public official is not liable to members of the public for negligence that is strictly related to the performance of discretionary duties. *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987). When public officials perform purely ministerial duties, however, they may be held liable. *Kanagawa*, 685 S.W.2d at 835. A discretionary act requires "the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* In contrast, ministerial acts "require certain duties to be performed 'upon a given state of facts, in a prescribed manner, in obedience to the mandate of the legal authority, without regard to an employee's own judgment or opinion concerning the propriety of the act to be performed.'" *Jungerman v. City of Raytown*, 925 S.W.2d 202, 205 (Mo. banc 1996). Determination of whether a public official's acts are discretionary or ministerial rests upon the facts of the case. *Kanagawa*, 685 S.W.2d at 836. In making a determination, courts weigh factors such as "the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and

judgment, and the likely consequences of withholding immunity." *Id.*

■ The taxpayers assert that the board members are responsible only for "setting a tax rate ceiling and revising it each year." They claim that the board members exercise no discretion in setting the highest lawful levy for each school district because section 137.073, RSMo and article X, section 22(a) provide specific direction to the board members in this regard.

The taxpayers are correct insofar as their claim extends. They ignore, however, other important activities in which board members engage in selecting the tax levy rate that is ultimately set for the school district. It is the entire process of selecting the levy rate upon which this Court focuses in determining whether the board members are entitled to official immunity, not merely the act of determining the highest lawful levy.

Viewing the levy-setting process as a whole – the selection of the operating levy for the district – it is evident that no legal mandate prevents the board members from exercising judgment regarding the levy rate that is ultimately set. Only the determination of the highest lawful levy, pursuant to section 137.073, RSMo, and article X, section 22(a), is prescribed by law. Beyond that, the board members must exercise discretion in setting a levy. Board members are under no obligation to levy the maximum ceiling rate. In setting the levy rate, they must exercise some degree of reason and judgment in deciding how to determine the district's needs, and how to proceed once they ascertain those needs. Their actions are discretionary. As a consequence, they rightly claimed the protection of the doctrine of official immunity.

■ The taxpayers contend that even if the doctrine of official immunity applies, section 139.300.1, RSMo 1994, waives that immunity. Subsection 1 of section 139.300 provides:

Every county clerk, assessor, collector or other officer, who refuses or knowingly neglects to perform any duty enjoined on him by, or consents in or connives at any evasion of the laws relating to the assessment, levy and collection of taxes, whereby any proceedings required by such laws are prevented or hindered, or any property is unlawfully exempted from taxation or is entered upon the tax list at less than its full cash value, is liable for each offense, neglect or refusal, individually and on his official bond, for double the amount of the loss or damage caused thereby.

The taxpayers assert that subsection 1 "specifically waives any immunity of public officials with regard to illegal tax levies." The entirety of their argument is: "As the Respondent School Board Members are 'other officers' who neglected to perform duties imposed upon them by the Missouri Constitution and statute with regard to tax levies, they cannot assert any immunity because Section 139.300.1 waives any immunity."

The taxpayers fail to develop their assertion. It stands without reference to any legal authority and is devoid of analysis. Without more, this Court cannot provide meaningful appellate review. *Missouri Ass'n of Counties v. Wilson*, 3 S.W.3d 772, 775 (Mo. banc 1999). The trial court properly dismissed the individual school board members from the suits.

In conclusion, the schools were not entitled to summary judgments because the schools failed to prove that annual adjustments were not required to the maximum authorized current levy, under article X, section 22(a) for the years 1994, 1995, 1996, 1997, and 1998, and because the schools failed to prove that annual adjustments were not required to the tax rate ceiling under section 137.073, RSMo, for the years 1997 and 1998. As the analysis of the requirements of article X, section 22(a) and section 137.073, RSMo, reveals, the two provisions serve two related but different purposes. Article X, section 22(a) pro-

vides for a maximum authorized levy based on adjustments to the rate levied on November 4, 1980, unless the voters grant approval otherwise. *See Fort Zumwalt Sch. Dist. v. State*, 896 S.W.2d 918, 921 (Mo. banc 1995). The computation under article X, section 22(a) establishes the maximum amount that "*could have been collected* at the existing authorized levy on the prior assessed value." Mo. Const. Art. X, section 22(a) (emphasis added). The tax rate ceiling under section 137.073, RSMo, meanwhile, is the amount that would "produce from all taxable property ... substantially the same amount of tax revenue *as was produced* in the previous year...." Section 137.073.2, RSMo (emphasis added). Although the formulas used to compute the two tax rate ceilings may involve some of the same variables, section 137.073, RSMo, and article X, section 22(a) may establish two distinct ceilings. *See* section 137.073.4(1), RSMo (differentiating between two distinct tax rate ceiling computations); section 137.037.4(2), RSMo (providing for computation of multiple tax rate ceilings "separately" and requiring the use of the "calculation that produces the lowest tax rate ceiling"). Pursuant to section 137.073.4(2), RSMo, the school districts are required to utilize the lowest tax rate ceiling as the highest lawful levy in the district. Under the legislative scheme, computing a separate tax rate ceiling pursuant to section 137.073, RSMo, will not violate the terms of article X, section 22(a) because the section 137.073, RSMo, tax rate ceiling will be used only if it is lower than that required by article X, section 22.

On remand, the parties may put on such additional proof as they deem necessary. The trial court should then determine for each of the five years in question the highest lawful levy and determine whether the taxpayers have proven that the schools assessed a levy in excess of the highest lawful levy.

The judgments are affirmed in part and reversed in part and the causes remanded for proceedings consistent with this opinion.

LIMBAUGH, WHITE, HOLSTEIN and BENTON, JJ., concur; PRICE, C.J., concurs in separate opinion filed; WOLFF, J., concurs in separate opinion filed.

WILLIAM RAY PRICE, Jr., Chief Justice, concurring.

I concur in all respects with the majority opinion authored by Judge Covington. I also am persuaded by Judge Wolff that there exist significant issues concerning whether the taxpayers' claims were properly and timely asserted. I am reluctant, however, to address those issues absent briefing and argument by the parties.

MICHAEL A. WOLFF, Judge, concurring.

The taxpayers whose lawsuits were dismissed by the trial court at the pleading stage have won this appeal. But even if the taxpayers ultimately prevail on their Hancock Amendment theory, that does not mean that they and the class they seek to represent will be entitled to property tax refunds.

To be eligible for tax refunds, the taxpayers' lawsuits must be timely filed under the statutory scheme. The issue of timeliness – and hence of eligibility for refunds – is a major issue left open by the principal opinion, and the parties, to be addressed after these cases are remanded to the trial court.

Whether taxpayers have a remedy for refunds is dependent upon statute, not on the constitution. In that regard, the issue of timeliness is critical. When a school district sets its tax rate, and there is no legal action challenging the rate, taxes are collected and the district receives state aid in an amount based upon the tax rate. If, years later, a challenge to the rates is successful and refunds are required, state aid would need to be retrospectively computed. The impact of such after-the-fact

adjustments would be devastating to individual school districts.

It is well to interpret and enforce the requirements of the constitution, but it is quite another matter to disrupt settled expectations years after a constitutional violation has purportedly occurred. *See Hammerschmidt v. Boone County*, 877 S.W.2d 98, 105 (Mo. banc 1994) (Holstein, J., concurring).

Ordinarily we should not address issues left open and not briefed by the parties. But these lawsuits are being paid for, at least in part, with school district funds that would otherwise be spent on educating schoolchildren. Addressing the ultimate issues of timeliness and remedy here may be helpful in bringing these actions to a swift and correct conclusion after they are remanded to the trial court.

If, as it appears,[1] plaintiffs' lawsuits were not filed before the taxes became payable – December 31 of the tax year – refunds are not available. A brief review of the Hancock Amendment and statutory scheme will support this conclusion.

### The Hancock Framework

The Hancock Amendment "aspires to erect a comprehensive, constitutionally-rooted shield ... to protect taxpayers from government's ability to increase the tax burden above that borne by the taxpayers on November 4, 1980" unless a tax increase is approved by voters. *Fort Zumwalt School Dist. v. State*, 896 S.W.2d 918, 921 (Mo. banc 1995).

But the manner of enforcement of Hancock's mandates is subject to the orderly procedures established by statute. "The enforcement of the right to be free of increases in taxes that the voters do not approve in advance may be accomplished in two ways." *Ring v. Metropolitan St. Louis Sewer Dist.*, 969 S.W.2d 716, 718 (Mo. banc 1998). The two ways are:

> First, taxpayers may seek an injunction to enjoin the collection of a tax until its constitutionality is finally determined. Second, if a political subdivision increases a tax in violation of article X, section 22(a), and collects that tax prior to a final, appellate, judicial opinion approving the collection of the increase without voter approval, the constitutional right established by article X, section 22(a), may be enforced only by a *timely* action to seek a refund of the amount of the constitutionally-imposed increase.

*Id.* at 718–19 (emphasis added).

Section 23 of article X of the state constitution, a part of the Hancock Amendment, gives taxpayers standing to bring "actions for interpretation" of the Hancock Amendment and includes a provision for "reasonable attorneys' fees." Except for the provision relating to attorneys' fees, the enforcement provision of the Hancock Amendment, section 23, is not a consent to suit for money judgment. *Fort Zumwalt*, 896 S.W.2d at 923.

Thus, an action for property tax refunds must conform to statutory requirements, and, specifically, the action must be timely.

### The Statutory Scheme

The local school district board sets the levy rate for the district by September 1, after at least one public hearing where the proposed rates are discussed. Section 67.110, RSMo 1994.

After receiving the rate from the school district,[2] the county clerk delivers the tax book with the current year's tax rates to the county collector by October 31, which is when the tax rates become official for the tax year ending December 31 of the same year. Section 137.075, RSMo 1994; section 137.290, RSMo Supp.1999.

---

1. These cases challenge the rates for 1995, 1996, 1997, and 1998. The lawsuits were initially filed in 1998, challenging the tax rates for the years 1995, 1996, and 1997. The lawsuits were amended in 1999, challenging the tax rate for 1998.

2. In these cases, the school districts set their rates in July or August in the years at issue.

Section 137.073.8, RSMo Supp.1999, allows a taxpayer to challenge the tax levy by making a formal complaint with the prosecuting attorney of the county. If the prosecutor fails to bring an action within ten days of the filing of the complaint, the taxpayer may bring a class action under that section.

The civil action contemplated by the statute is only for injunctive relief. As section 137.073.9 provides:

> If in any action, including a class action, the court issues an *order requiring a taxing authority to revise the tax rates* as provided in this section or *enjoins a taxing authority from the collection of a tax because of its failure to revise the rate of levy* as provided in this section, any taxpayer paying his or her taxes when an improper rate is applied has erroneously paid his or her taxes in part, whether or not the taxes are paid under protest as provided in section 139.031, RSMo. The part of the taxes paid erroneously is the difference in the amount produced by the original levy and the amount produced by the revised levy. The township or county collector of taxes or the collector of taxes in any city shall refund the amount of the tax erroneously paid. The taxing authority refusing to revise the rate of levy as provided in this section shall make available to the collector all funds necessary to make refunds under this subsection. (emphasis added).

The class action contemplated in section 137.073.8 provides for notice to the members of the class only by publication "at least once each week for four consecutive weeks in a newspaper of general circulation published in the county where the civil action is commenced and in other counties within the jurisdiction of a taxing authority." If the action were for refunds, in which the members of the class had an identifiable monetary interest, individual notice to the class members would be required as a matter of due process. *Eisen*

*v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

When such an action is pending, a taxpayer who does not know of the pending challenge may in fact pay the tax without protest. But, the pendency of the action puts the taxing authority on notice of the challenge to its tax rate brought on behalf of all taxpayers. Accordingly, the statute waives what ordinarily would be required, i.e., a timely protest by the individual taxpayer.

To require a timely challenge to the tax rate, before the taxes under the rate are due, is the only interpretation consistent with the role of school district tax levy rates with respect to school district financing. The state's foundation aid formula, section 163.031.6, bases the amount of state aid that a district receives upon the school district's tax rate, specifically that component of the rate that is the "operating levy for school purposes." Thus, the tax rate used by the state in calculating state aid is the levy rate used for the prior year's property tax assessments; i.e., the rate that took effect December 31 when taxes were due. For the districts involved in this litigation, the higher the operating levy for school purposes, the higher the amount of state aid.

Neither chapter 137 nor chapter 163 recognizes that school district tax rates may be revised, or be subject to revision after they have gone in effect, unless there is an action to protest or challenge the rates prior to their becoming effective. Section 163.031.6.2, the foundation aid formula, recognizes and makes adjustment for "payment received the current year of protested taxes due in prior years … minus the amount of any protested taxes due in the current year and for which notice of protest was received during the current year…." Absent a timely challenge, there is no procedure for making an after-the-fact adjustment of the tax rate or of the district operating levy for school purposes. *See Buck v. Leggett,* 813 S.W.2d 872, 875 (Mo. banc 1991); *Horizons West*

*Properties v. Leachman,* 548 S.W.2d 550, 553 (Mo. banc 1977).

Finality in taxation is essential to local government. "Government budgets are prepared on an annual cash basis. Therefore, in the absence of a statutory limitation on the time in which a taxpayer may file suit to declare a tax unconstitutional, governments would be subject to substantial liabilities from refunds of those unconstitutional taxes." *Community Fed. Sav. & Loan Ass'n v. Director of Revenue,* 752 S.W.2d 794, 797 (Mo. banc 1988) (citations omitted). School districts are an arm of state government, *Hughes v. Civil Service Comm'n of City of St. Louis,* 537 S.W.2d 814, 815 (Mo.App.1976), and to deny them the same level of finality of taxation would be contrary to the statutory scheme. Moreover to the extent that an after-the-fact financial burden causes a school district to lapse under section 162.081, the district's financial distress may impose an added burden on the state's taxpayers. This result would be contrary to the purpose of the Hancock Amendment. *Fort Zumwalt,* 896 S.W.2d at 923.

A timely challenge to the rate, even though not fully adjudicated before the end of the calendar year, would at least provide notice to the school districts and allow them to prepare for what could be an otherwise crushing financial blow.[3] A timely challenge would provide such notice at least six months before a district's tax rate is used in the calculation of state aid under the formula in section 163.031, which operates on the state's July 1 to June 30 fiscal year. This timing may also make possible a judicial decision on the district's tax rate, or a voluntary revision of the rate, prior to its use in the state school aid formula.

As noted, finality in state aid to schools is embodied in the statutes. State aid is based in large part on the tax monies generated by local school districts. Section 163.031.6, RSMo Supp.1999. Erroneous state aid payments to school districts may only be corrected by adjustments in the following year. Section 163.091, RSMo 1994. State aid payments are final for the year in which they are paid, as penalties and other adjustments are to be paid in the next school year. Section 163.031.9, RSMo Supp.1999.[4] The penalties may either be paid by the district or withheld from the following year's state aid. *See also* Section 163.021.5–7, RSMo Supp.1999 (prohibiting or limiting state aid in the following year for failure to comply with statutes in the preceding year).

**Lawsuits Challenging Property Tax Rates**

Section 137.073.8 authorizes a taxpayer to bring a class action to force a revision of the tax rate and provides for attorneys' fees and other costs in bringing the action. The section also provides: "Any action brought pursuant to this section shall be set for hearing as soon as practicable after the cause is at issue." When these provisions are read together, it is clear that the legal action challenging the rates, brought by and on behalf of taxpayers, is part of the statutory scheme for establishing the correct rate of taxation either prior to the date on which the rate of tax is to go into effect, or at least with the commencement of an action to give notice to the school district that its tax rate might be in error before the tax rate goes into effect. Section 137.073.9 provides that the taxing au-

---

**3.** In these cases, the appellants assert that Morgan County school district collected excess taxes totaling approximately $3,093,388 from 1994 to 1998 (or about 22% of the total taxes collected for the district) while the Lebanon school district collected an excess of about $4,212,276 during the same period (roughly 21% of the total taxes collected for the district).

**4.** The section deals with state audits of lunch aid for students. If discrepancies cannot be resolved, "the department of elementary and secondary education shall require that the amount ... be repaid by the district in the next school year and shall additionally impose a penalty ... which penalty shall also be paid within the next school year." Section 163.031.9, RSMo Supp.1999.

thority will refund the tax erroneously paid, and a "taxing authority refusing to revise the rate of levy ... shall make available to the collector all funds necessary to make refunds.... No taxpayer shall receive any interest on any money erroneously paid by him or her pursuant to this subsection." The section also provides that nothing in the law "shall be construed to require a taxing authority to refund any tax erroneously paid prior to or during the third tax year preceding the current tax year."

These sections do not, however, authorize an action for refunds, only for an injunction or order revising the tax rate. The last part of this section, just quoted, sets a time limit for when the judicial action is to be completed. It is not a statute of limitations, nor does it enable lawsuits to be commenced years after the tax year in question. Taxes erroneously collected are not subject to refund without specific statutory authority, and the statute can and does set a specific limitation. *Community Federal Savings & Loan Ass'n*, 752 S.W.2d at 797.

We should not construe these subsections as authority for bringing class actions for refunds years after the taxes have been set, and collected, and used in the determination of state school aid. The statute authorizes a class action, and attorneys' fees if the action is successful, as part of the scheme for making sure that local governments set correct levy rates. The filing of a class action relieves individual taxpayers from having to file timely protests before the December 31 due date. The class action authorized by statute should not be read as an invitation for litigants to challenge tax rate decisions for a period of years after a tax rate has been in place to obtain class wide refund relief and attorney fees.

**Conclusion**

The principal opinion provides an important clarification on the setting of school tax rates. Our decision leaves open whether any remedy, on remand, would include refunds for prior years where no timely challenge has been filed. It is doubtful that such relief is available. That said, I concur in the decision.