**Thomas G. THOMPSON, et al., Appellants,**

v.

**Clark HUNTER and Morgan County R–II School District, Respondents.**

No. SC 85225.

Supreme Court of Missouri, En Banc.

Oct. 28, 2003.

Rehearing Denied Nov. 25, 2003.

Craig S. Johnson, Lisa Cole Chase, Jefferson City, for Appellants.

Alex Bartlett, Marvin W. Opie, Morgan County Prosecuting Attorney, Versailles, Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, Asst. Atty. Gen., Jefferson City, for Respondents.

Ann K. Covington, Juan D. Keller, B. Derek Rose, St. Louis, for Amicus Curiae.

Edward F. Downey, Jefferson City, for Amici Curiae Associated Industries of Missouri and Missouri Chamber of Commerce & Industry.

John C. Dods, Joe Rebein, Susan A. Berson, Eric T. Mikkelson, Kansas City, for Amici Curiae David Humphreys and Tamko Roofing Products, Inc.

Penney Rector, Jefferson City, for Amici Curiae Missouri Council of School Administrators.

Kelli Hopkins, Columbia, MO, for Amici Curiae Missouri School Boards' Association.

MICHAEL A. WOLFF, Judge.

**Introductory Summary**

Two constitutional amendments deal with school district tax rates. Under the

Missouri Constitution's 1980 Hancock Amendment, the maximum property tax rate for 2001 for the school district was $1.8647, according to the taxpayers who brought this action. Under a 1998 constitutional amendment, the rate is $2.75 per $100 of assessed valuation as set by the school district.

Do these provisions clash, or can they be harmonized?

The taxpayers of the Morgan County R–II School District who brought this action contend that the 1998 constitutional amendment, which allows a property tax rate of $2.75 without voter approval, is subject to the Hancock Amendment, section 22(a) of article X, under which a district's maximum authorized levy is calculated. This suit for tax refunds is based on their contention that Hancock, in article X, section 22(a), obligates the school district to roll back its levy to less than $2.75 because the growth in the valuation of property in the district outpaced the general rate of inflation—an event that, taxpayers argue, triggers a rollback under section 22(a).

The issue before the Court is whether Constitutional Amendment No. 2 (1998), which amends article X, section 11(b), authorizes a school district to set a property tax levy of $2.75 without voter approval regardless of the Hancock Amendment.

The Court holds that article X, section 11(b), as amended in 1998, authorizes the school district to set its property tax levy rate at $2.75 or less, regardless of the calculation required by article X, section 22(a), the Hancock Amendment.

The circuit court dismissed the taxpayer plaintiffs' petition. The judgment of the circuit court is affirmed.[1]

**Facts and Procedural History**

The taxpayers own property subject to the operating levy property tax rate of the school district. They claim that they paid their 2001 property taxes under protest. On January 14, 2002, the taxpayers filed a "Petition for Declaratory Judgments, Tax Refunds," alleging that the total locally assessed valuation of property within the school district increased approximately 16 percent, while the consumer product index change, from 2000 to 2001, was 3.3 percent.[2] Named as defendants in the taxpayers' suit were Clark Hunter, Morgan County Collector, the Morgan County R–II School District, and Jeremiah Nixon, state attorney general.

The school district argued that taxpayers' claims were barred because they did not challenge the $2.75 rate in 2000 when the school district first raised its rate to $2.75. The district asserted that claims for 1999, 2000, and 2001 tax years were barred because they were not brought before the taxes were due and payable. The school district also argued that there was no real controversy between the parties because, as a matter of law, article X, section 11(b) controls over article X, section 22(a).

The circuit court dismissed the attorney general from the action; determined that it was too late for taxpayers to assert claims with respect to the property taxes for the 1999 and 2000 tax years; and held that claims for the 2001 tax year that were not asserted until after those taxes became due and payable were untimely. The cir-

---

1. This Court addresses the merits of the claim and does not consider the other grounds on which the circuit court dismissed the petition.

2. Taxpayers allege that the total locally assessed valuation of property within the school district increased from $133,350,583 in tax year 2000 to $154,544,577 in tax year 2001.

cuit court also found that the taxpayers had not stated claims for tax refunds with sufficient specificity to maintain an action for tax refunds. Regarding Constitutional Amendment No. 2, the 1998 amendment of article X, section 11, the circuit court held that "the voters of Missouri authorized the Morgan County R–II School District to adopt an operating tax levy of up to $2.75 per $100.00 of assessed valuation, without voter approval." The court found that the taxpayers, therefore, were not entitled to relief.[3]

After opinion by the court of appeals, this Court granted transfer. This Court has jurisdiction under article V, section 10 of the Missouri Constitution.

## The Levy Rate Authorized by Article X, Section 11(b)

Article X, section 11 was adopted in 1942, and section 11(b) has been in the constitution since 1945. Section 11(b) addresses the amount of tax a political subdivision can levy without voter approval. Section 11 initially authorized a school district to set a property tax rate of $1.00 without voter approval. In 1966, section 11(b) was amended to authorize a school district to set a property tax rate of $1.25 without voter approval. *See Three Rivers Junior College Dist. of Poplar Bluff v. Statler*, 421 S.W.2d 235, 243 (Mo. banc 1967). The authorization to levy a rate of $1.25 without voter approval was, thus, well established prior to the enactment of the Hancock Amendment in 1980.

Constitutional Amendment No. 2 was placed before the voters of Missouri at the November 1998 general election with the title: "School board may set operating levy no higher than $2.75 without a vote. Voter approval by simple majority is required to set a levy up to $6.00. Voter approval by two-thirds required to set levy above $6.00."

The voters approved Constitutional Amendment No. 2, amending article X, section 11(b) by raising the maximum tax rate that certain school districts could levy without voter approval from $1.25 to $2.75.[4] Specifically, section 11(b) allows "school districts formed of cities and towns" to impose a property tax rate of up to "two dollars and seventy-five cents on the hundred dollars assessed valuation."

## The Hancock Amendment, Article X, Section 22

Missouri voters in 1980 adopted an amendment to Missouri Constitution article X, sections 16 through 24, commonly known as the "Hancock Amendment." The Hancock Amendment was intended to "protect taxpayers from government's ability to increase the tax burden above that borne by the taxpayers on November 4, 1980," the date it was approved. *Fort Zumwalt Sch. Dist. v. State*, 896 S.W.2d 918, 921 (Mo. banc 1995). The purpose of the Hancock Amendment was to "rein in increases in governmental revenue and ex-

---

**3.** As noted, the circuit court denied relief, in part, because of the issue of timeliness. *See Green v. Lebanon R–III School District*, 13 S.W.3d 278, 286–290 (Mo. banc 2000) (Wolff, J., concurring). *See also Koehr v. Emmons*, 55 S.W.3d 859, 863 (Mo.App.2001), 98 S.W.3d 580, 583 (Mo.App.2002). The Court here reaches the merits and does not deal with the timeliness issue.

**4.** Mo. Const. art. X, sec. 11(b):

Any tax imposed upon such property by municipalities; counties or school districts, for their respective purposes, shall not exceed the following annual rates: ... For school districts formed of cities and towns, including the school district of the city of St. Louis—two dollars and seventy-five cents on the hundred dollars assessed valuation; For all other school districts—sixty-five cents on the hundred dollars assessed valuation.

penditures." *Roberts v. McNary*, 636 S.W.2d 332, 336 (Mo. banc 1982).

The enactment of the Hancock Amendment in 1980 included the provision at issue here, section 22(a) of article X of the Missouri Constitution.[5] Section 22(a) requires voter approval of an increase in the levy of an existing tax above the levy authorized by law when the section was adopted on November 4, 1980. *Tannenbaum v. City of Richmond Heights*, 704 S.W.2d 227, 229 (Mo. banc 1986).

 If there are methods of calculating more than one tax rate "ceiling" or "lid," the "highest lawful levy" is the rate above which a school district may not levy. *Green v. Lebanon R–III School District*, 13 S.W.3d 278, 280 (Mo. banc 2000). Under article X, section 22(a), the "maximum authorized current levy" is the "higher of the amount in effect at the time that section was adopted, November 4, 1980, or the highest amount approved by the voters since that date." *Id.* at 281. *See also Goode v. Bond*, 652 S.W.2d

98, 98 (Mo. banc 1983).[6] The operating levy on November 4, 1980, was $2.95, and a higher operating levy of $3.15 was adopted with voter approval in 1983. The taxpayers contend, however, that the maximum authorized levy for 2001—based on calculations required by the Hancock Amendment—is $1.8647.[7] Since the Court concludes that the two constitutional provisions can be reconciled, the property tax rate of $2.75 authorized by section 11(b) is not subject to the levy calculated under Hancock.

## The Constitutional Provisions Do Not Conflict

 The taxpayers' fundamental argument is that if the Hancock Amendment requires the tax levy rate to be reduced below $2.75, then the district's $2.75 levy rate—without a vote of the people—is unconstitutional. Section 22(a) requires that the valuation of the district's property be calculated against the norm of the rate of inflation, as measured by the general price

---

5. Mo. Const. art. X, sec. 22(a):

 Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. If the definition of the base of an existing tax, license or fees, is broadened, the maximum authorized current levy of taxation on the new base in each county or other political subdivision shall be reduced to yield the same estimated gross revenue as on the prior base. If the assessed valuation of property as finally equalized, excluding the value of new construction and improvements, increases by a larger percentage than the increase in the

general price level from the previous year, the maximum authorized current levy applied thereto in each county or other political subdivision shall be reduced to yield the same gross revenue from existing property, adjusted for changes in the general price level, as could have been collected at the existing authorized levy on the prior assessed value.

6. *Goode v. Bond* held that increases in state taxes receiving voter approval are excluded from limitations on revenues that may be collected by the state.

7. The taxpayers contend that for every year after 1980, section 22(a) requires the maximum authorized current levy to be reduced in any year that valuation growth on the tax base from the previous year exceeds inflation growth. They cite the Missouri State auditor's "Review of 2001 Property Tax Rates," which says the district's maximum authorized 2001 levy was $1.8647.

level.[8] This calculation will yield a property tax levy that the school district's board may set as the property tax rate. But if the district's board opts for a rate of $2.75 instead of the Hancock-calculated rate, section 11(b) authorizes the school district to do so.

In construing the Missouri Constitution, the Court's task is to reconcile provisions that may seem to be in conflict. When two constitutional provisions are found to be in conflict, the later in time prevails, as it is the most recent expression of the will of the people. *State ex rel. McKittrick v. Bode*, 342 Mo. 162, 113 S.W.2d 805, 808 (banc 1938).[9] While the increase in the tax rate to $2.75 in section 11(b) was adopted by a vote of the people 18 years after section 22(a) was adopted, in this instance, there is no conflict. The school district may be guided by the Hancock-calculated rate or, regardless of that calculation, may set the rate up to and including $2.75 without voter approval.

Constitutional Amendment No. 2, enacted in 1998, resolved some of the uncertainty that affected the setting of property tax rates for school districts following the passage of Senate Bill 380 (SB 380), the Outstanding Schools Act of 1993. SB 380 rewrote the school foundation aid formula and required school districts to adopt levies of $2.75. One of its provisions, section 163.021.2,[10] conditions the availability of additional state aid on the use of a $2.75 levy and purports to authorize a school district to set its levy rate at the highest rate authorized by the district's voters, notwithstanding any calculations of rollbacks under the Hancock Amendment. School districts with operating levies less than $2.75 may be classified as unaccredited; section 163.023. A school district that has a property tax levy rate of less that $2.75 loses some state aid under the foundation aid formula. Amendment No. 2 followed the 1993 school-aid legislation in 1998 and authorizes school districts to set a $2.75 levy without voter approval.[11]

Constitutional Amendment No. 2, approved by the voters in 1998, authorized the school district to adopt an operating levy of $2.75 without further voter approval and without rolling back the $2.75 levy. Amendment No. 2 also authorized property tax levy rates above $2.75 with a simple majority of the district's voters, up to a level of $6.00, and required a two-thirds vote of the district's voters for levy rates above $6.00.

**Conclusion**

The clear language of article X, section 11(b) authorizes school districts to maintain or set levies at the $2.75 rate by decision of the school board. Voters relinquished the right to vote on school district levy increases up to and including the rate

8. The general price level, as used in sections 16 through 24 of article X, is defined in article X, section 17(3) to mean "the Consumer Price Index for All Urban Consumers for the United States, or its successor publications, as defined and reported by the United States Department of Labor, or its successor agency."

9. There are, of course, occasional conflicts in a constitution that runs over 40,000 words and has been amended over 250 times since its adoption in 1945.

10. All statutory citations are to RSMo 2000.

11. The state auditor is responsible for verifying that a school district's highest lawful levy for each year complies with section 137.073. *Green*, 13 S.W.3d at 280. The auditor reported in 2002 that 111 school districts increased taxes and revenues by $27,669,024 "without voter approval by utilizing the Constitutional Amendment No. 2 approved by the voters on November 3, 1998, which allows school districts to levy a minimum of $2.75, per $100 of assessed valuation, by school vote." Review of 2002 Property Tax Rate, Report No. 2002–123 at page 5.

of $2.75 when they amended article X, section 11(b) in 1998.

The judgment of the circuit court is affirmed.

All concur.