CITY OF HAZELWOOD, Respondent,

v.

Robert H. PETERSON,
et al., Appellants.

and

Chris Braudis, et al., Respondents,

v.

Florissant Valley Fire Protection
District, et al., Appellants.

No. SC 82716.

Supreme Court of Missouri,
En banc.

May 29, 2001.

Rehearing Denied July 24, 2001.

James E. Mello, Jeffrey T. McPherson, Cynthia Hoemann, St. Louis, for appellants.

James J. Wilson, Kevin O'Keefe, Corinne N. Darvish, Richard W. Fischer, St. Louis, for respondents.

PRICE, Chief Justice.

Chris Braudis, Steve Knobbe, and the City of Hazelwood (collectively, Respondents) commenced two lawsuits to recover excess tax payments made to the Florrisant Valley Fire Protection District (the District). The Circuit Court of St. Louis County consolidated the cases and granted summary judgment in favor of Respondents. The court concluded that the District collected a certain tax increase in violation of article X, section 22(a) of the Missouri Constitution, part of what is commonly referred to as the Hancock Amendment.

The District and the individually named defendants—Shannon Duffy, Gary Henke, and Jack Gallagher (collectively, Appellants)—filed timely notices of appeal to the Court of Appeals, Eastern District. Following opinion by the court of appeals, we ordered the matter transferred. This

Court has jurisdiction under article V, section 10 of the Missouri Constitution. The judgment of the circuit court is affirmed in part and reversed in part.

## I. Facts

Hazelwood is a charter city organized under article VI, section 19 of the Missouri Constitution. In 1994, Hazelwood annexed a certain portion of St. Louis County known as the "Northwest Area." After the annexation, the Circuit Court of St. Louis County ordered the District to provide fire, emergency, and ambulance services to the Northwest Area in exchange for certain fees to be paid by the city of Hazelwood. Using a statutorily prescribed formula, Hazelwood and the District entered into a "Fire Service Agreement" on April 12, 1995. See section 321.675, RSMo 1986. Under this agreement, the individual taxpayers of the Northwest Area paid property taxes to Hazelwood, which in turn made payments to the District that were equal to the District's tax rate.

At the time of the agreement, the District's tax rate (and consequently the fee under the Fire Service Agreement) was sixty-six cents per one hundred dollars of assessed valuation. On August 6, 1996, the St. Louis County Board of Election Commissioners held an election in which the District asked the voters to approve an increase of ten cents per one hundred dollars of assessed valuation. On August 19, 1996, the official election results showed that the proposed increase passed by a margin of thirteen votes.

Shortly thereafter, certain voters filed an election contest to challenge the validity of the election. While the election contest was still pending, the District levied the tax increase. Acting in accordance with the Fire Service Agreement, Hazelwood submitted the increased payments, but noted that the payments were made "under protest." On February 14, 1997, the trial court entered an order setting aside the election because of an irregularity in the ballots. The court ordered a new election, and the voters failed to approve the tax increase.

On January 3, 1997, the individual plaintiffs in this case filed suit to recover the excess payments made to the District while the election contest was pending in the circuit court. The city of Hazelwood filed a similar claim on February 13, 1997. On June 25, 1997, the circuit court consolidated the cases.

After reviewing the parties' motions for summary judgment, the circuit court entered a single judgment disposing of all claims. The court certified a class consisting of all persons who paid property taxes to the District during 1996 and ordered that the claims of the individual plaintiffs be maintained as a class action. The court found that while the District had the right to treat the tax increase as approved while the election contest was pending, it did so "at its own peril" until the court resolved the claims arising under the election contest. The court ordered the District to return all overpayments made by the individual taxpayers and by the city of Hazelwood. In addition, the court awarded costs and attorneys' fees as required by the Hancock Amendment.

## II. Standard of Review

■ The propriety of summary judgment is purely an issue of law, and appellate review is essentially de novo. *ITT Commercial Finance Corp. v. Mid-America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). This Court reviews the record in the light most favorable to the party against whom summary judgment was entered. *Fisher v. State Highway Comm'n*, 948 S.W.2d 607, 611 (Mo. banc 1997). Summary judgment is proper when no

genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.;* Rule 74.04(c).

### III. Discussion

The District cites five points of error in the judgment of the circuit court. For the sake of convenience, we consider first whether the Hancock Amendment (Mo. Const. art. X, sec. 16, *et seq.*) mandates a tax refund for taxes collected while the successful election contest was pending (Appellants' points I and II). Next, we consider whether the circuit court properly certified the individual plaintiffs' claims as a class action under Rule 52.08 (Appellants' point III). Finally, we consider whether the circuit court erred in awarding attorneys' fees in favor of Respondents (Appellants' points IV and V).

### A.

■ This case requires us to consider the relationship between the Hancock Amendment and section 115.595, RSMo 2000. The District argues that the Hancock Amendment must be read in conjunction with the state's election laws to determine whether a tax increase is constitutional. To the contrary, we hold that the plain language of the constitutional amendment is controlling.

The constitutional right established in article X, section 22(a) assures taxpayers that they will be free of increases in local taxes unless the voters approve those increases in advance. *Ring v. Metropolitan St. Louis Sewer Dist.,* 969 S.W.2d 716, 718 (Mo. banc 1998). The amendment states, in relevant part:

Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon.

Mo. Const. art. X, sec. 22(a).

■ In this case, the tax increase was never approved by a majority of the qualified voters in St. Louis County. The District argues that a majority of the voters did approve of the increase when the election board initially counted the votes on August 19, 1996. This position, however, is wholly inconsistent with the power of the judiciary to review the election process. *See Ring,* 969 S.W.2d at 718–19; section 115.526, *et seq.,* RSMo 2000. On February 14, 1997, the circuit court ordered that the election be "set aside and void." An election that is invalid and void cannot constitute voter approval for purposes of article X, section 22(a).

■ The District relies on section 115.595.2 for the proposition that a tax increase can be valid while an election contest is pending and yet void after the election contest is decided. Section 115.595.2 states as follows:

In each case of a pending election contest on a question, the question shall be deemed approved or disapproved as shown by the official returns of the election until the contest is decided. When the contest is decided, the question shall be deemed approved or disapproved in accordance with the decision as of the day the contest is decided, or as of the day it would otherwise have been deemed approved or disapproved, whichever is later.

Section 115.595.2, RSMo 2000. The District correctly asserts that the statute allows a political subdivision to act upon the

results of an election before an election contest is decided. In other words, the District was empowered to begin collecting the new tax after the official results were tabulated. However, it does not follow that the District was entitled to keep the collected funds after a court of law found the tax increase to be unconstitutional. The statute must be read consistently with the constitution, not the other way around. As the circuit court correctly stated, "While the District had the right under section 115.595.2 to treat the increase as having been approved while the election contest was pending, it did so at its peril and at the risk of being unable to retain the funds if the voters' approval was set aside." The plaintiffs are entitled to a refund.

■ The District further argues that Hazelwood did not pay a "tax," but was merely a party to the "Fire Service Agreement," a complex services contract. The agreement between Hazelwood and the District followed a strict formula mandated by statute. The formula required the city to submit annual payments equal to the assessed value of all taxable property multiplied by the District's annual tax rate. Section 321.675, RSMo 1986. If paid by a taxpayer, these fees would clearly constitute a "tax, license or fee" within the meaning of article X, section 22. *See Beatty v. Metropolitan St. Louis Sewer Dist.*, 867 S.W.2d 217, 220–21 (Mo. banc 1993); *Keller v. Marion County Ambulance District*, 820 S.W.2d 301, 303 (Mo. banc 1991). Nevertheless, "[t]he Hancock Amendment makes no pretense of protecting one level of government from another." *Fort Zumwalt School Dist. v. State*, 896 S.W.2d 918, 921 (Mo. banc 1995). By limiting the class of plaintiffs to "any taxpayer," the amendment recognizes "that any apparent injury to the [city] is merely derivative of the taxpayer's injury." *Id.* Hazelwood is without standing to sue under the Hancock

Amendment. For the same reason, the city lacks standing to sue under section 139.031, RSMo 2000, which states, "Any *taxpayer* may protest all or any part of any taxes *assessed against him* . . . ." Section 139.031.1, RSMo 2000 (emphasis added).

■ Nevertheless, we affirm the judgment of the trial court for the simple reason that the amount the District is allowed to charge Hazelwood is controlled by section 321.675, RSMo 1986.

> The amount to be paid annually by the municipality to the fire district pursuant to subsection 1 of section 321.660 shall be the annual assessed value of all property subject to tax in the excluded area . . . multiplied by the annual tax rate as certified by the fire protection district to the municipality . . . per one hundred dollars of assessed value in such area.

Section 321.675, RSMo 1986. In 1996, the District's lawful tax rate was sixty-six cents per one hundred dollars of assessed valuation. As noted above, the voters failed to approve an increase in the District's 1996 tax rate. The Missouri Constitution, article X, section 22(a), prohibits any increase in the District's tax rate without the approval of the qualified voters. Therefore, the District's annual tax rate never increased, and the District collected fees in excess of the statutory amount and the Fire Service Agreement. The city of Hazelwood timely filed suit for the disputed amount. It is entitled to recover. Points I and II are denied.

## B.

■ Appellants next contend that the trial court erred in certifying the individual plaintiffs' claims as a class action. They argue that Missouri law does not permit the use of class actions in tax refund cases. *See Charles v. Spradling*, 524 S.W.2d 820,

823 (Mo. banc 1975). This argument is valid insofar as it relates to Missouri's statutory tax refund procedure. Nevertheless, Missouri's statutory procedures do not govern the remedies found in article X of this state's constitution.

In *Spradling,* this Court noted that Missouri's statutory tax refund provisions operated as a limited waiver of the state's sovereign immunity. *Id.* "When a state consents to be sued, it may be sued only in the manner and to the extent provided by the statute; and the state may prescribe the procedure to be followed and such other terms and conditions as it sees fit." *Id.* Unlike a statutory remedy, however, the remedy in article X, section 23 is not a typical waiver of the state's sovereign immunity. To the contrary, the constitutional amendment carves out specific state actions for which the state has no sovereign immunity to waive. The people of Missouri have reserved to themselves the constitutional right to enforce the Hancock Amendment, which operates as a wholly independent mechanism for the refund of unconstitutional taxes. In a suit brought under article X, section 23 of our constitution, the "plaintiffs are not precluded from bringing a Rule 52.08 class action if such a class action is appropriate under the specific facts of the case." *Ring v. Metropolitan St. Louis Sewer Dist.,* 969 S.W.2d 716, 719 (Mo. banc 1998). Under the facts of this case, the circuit court did not abuse its discretion in certifying a class of all owners of property within the District who paid property taxes in 1996. Rule 52.08. The point is denied.

### C.

In two final points of error, Appellants contend that the circuit court erred in awarding attorneys' fees both to Hazelwood and to the individual plaintiffs. The Hancock Amendment provides that a tax-payer who prevails in a claim brought under article X, section 23 "shall receive from the applicable unit of government his costs, including reasonable attorneys' fees incurred in maintaining such suit." Mo. Const. art. X, sec. 23. The circuit court properly awarded attorneys' fees to the individual plaintiffs, and Appellants' point V is denied.

As noted above, however, the city of Hazelwood does not have standing to sue under the provisions of the Hancock Amendment. Usually, parties are not entitled to an award of attorneys' fees absent a contract, statute allowing for the award, or in rare equitable situations. *Harris v. Union Elec. Co.,* 766 S.W.2d 80, 89 (Mo. banc 1989). The circumstances of this case are not so rare and exceptional as to justify an award of attorneys' fees to Hazelwood. Appellants' point IV is granted.

### *IV. Conclusion*

The judgment of the circuit court is reversed to the extent that it awards attorneys' fees to the City of Hazelwood. In all other respects, the judgment is affirmed.

LIMBAUGH, WHITE, HOLSTEIN, WOLFF and BENTON, JJ., concur.

LAURA DENVIR STITH, J., not participating.