Robert N. VOGT, Trustee for the
Robert N. Vogt Trust,
Appellant,

v.

Linda EMMONS, Collector of Franklin
County, Franklin County and Scenic
Regional Library, Respondent.

No. ED 83873.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 1, 2005.

Rehearing Denied March 23, 2005.

Byron E. Francis, Jeffery T. McPherson, Jacqueline P. Ulin, Deanna M. Wendler, Armstrong Teasdale LLP, St. Louis, MO, for appellant.

Mark Vincent, Vincent, Hoven & Purschke, Union, MO, Marc H. Ellinger, Blitz, Bardgett & Deutsch, L.C., Jefferson City, MO, for respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Robert N. Vogt, Trustee for the Robert N. Vogt Trust ("Taxpayer"),

appeals from the judgment of the Circuit Court of Franklin County granting respondent, Scenic Regional Library's ("Scenic"), motion to dismiss and also dismissing the case as to the remaining respondents, Linda Emmons, Collector of Franklin County ("Collector"), and Franklin County ("the County"). We affirm in part and reverse in part.

In December of 2001, Taxpayer filed his real property tax bills under protest. On June 24, 2002, Taxpayer filed a second amended petition,[1] in which he alleged the County and Scenic are political subdivisions of the State of Missouri, and that they did levy taxes for the year 2001 upon Taxpayer's real property. Taxpayer brought his action under Article X, Section 23 of the Missouri Constitution on behalf of himself, all taxpayers owning property and receiving tax bills from the County, and all taxpayers of the Scenic Library district. Taxpayer alleged all of these taxpayers are entitled to an adjudication concerning their entitlement to a refund of taxes that violate the Hancock Amendment, Article X, Section 22 of the Missouri Constitution.

Taxpayer alleged that in calculating the general revenue tax rate levy for the year 2000, the County violated the judgment of the Circuit Court of Franklin County in a similar action, *Jack Koehr, et al. v. Mary Ann Henderson, et al.*, Franklin County Circuit Court No. CV 198–0297CC ("the 1999 judgment").[2] In particular, Taxpayer argued the County did not use the 1999 tax rate ceiling of $.2914 to calculate the general revenue tax rate levy for the year

2000. Instead, Taxpayer maintained the County used $.3100 as the tax rate ceiling. Taxpayer alleged this mistake caused $80,-008.109 to be collected in excess of the allowable revenue under the 1999 judgment and Article X, Section 22.

Taxpayer argued the County also violated the 1999 judgment in 2001 by using $.3121 as the tax rate ceiling. According to Taxpayer, this mistake caused $211,822.33 to be collected in excess of the revenue allowable under the 1999 judgment and Article X, Section 22.

Scenic, according to Taxpayer, made the same mistake in calculating its tax rate levy for 2000 and 2001, which caused it to collect, respectively, $150,237.3444 and $159,562.028 in excess revenue.

Taxpayer alleged the County made a similar mistake with similar results in the computation of the tax rate levy for road and bridges purposes, which caused an excess of $43,081.2896 to be collected in 2000 and $232,168.937 to be collected in 2001. Taxpayer also argued the County failed to "adjust the sales tax revenue collected in the year 2000 for the year 2001 in accordance with section 67.505.3(6)."

Taxpayer sought a declaration that the County's tax levy for the year 2001 was unlawful, and asked the trial court to direct the County to calculate the tax rate levy for general revenue in the year 2001 using the tax rate ceiling set in the 1999 judgment. Taxpayer also asked the court to enjoin the Collector and the County from collecting any taxes under the unlawful tax rate or any amount over the lawful tax rate, and to refund to Taxpayer and

1. The original petition and the first amended petition are not contained in the record on appeal.

2. This judgment was appealed, and we reversed the trial court's certification of a plaintiff class, directed the trial court to dismiss all claims for class action relief. The Koehrs

were allowed to proceed on their claims as individuals, but the judgment on the Koehrs' individual claims in favor of the taxing district was affirmed. *Koehr v. Emmons,* 55 S.W.3d 859, 864 (Mo.App. E.D.2001) (*"Koehr I"*).

those on whose behalf he acts any sums paid over the amount due on their respective lawful tax bills. Taxpayer also sought punitive damages, costs, and expenses.

Taxpayer sought the same relief for his claim regarding Scenic's tax rate levy and for the tax rate levy for bridge and road purposes and for the year 2001. Taxpayer does not pray for relief with respect to any 2000 taxes.

In its answer, Scenic admitted it was a political subdivision of the State of Missouri, and that it was authorized to and did levy taxes upon real property for the year 2001. Scenic also asserted, as affirmative defenses, that (1) Taxpayer failed to state a claim upon which relief may be granted; (2) Taxpayer's allegations regarding the 1999 and 2000 tax rates were barred because they were not asserted in a timely manner; (3) Taxpayer sought relief from persons not party to this action; and (4) Taxpayer was barred from enforcing the 1999 Judgment by the doctrine of laches and the statute of limitations for property tax suits.

The Collector and the County filed a separate answer in which they asserted, as affirmative defenses, that (1) Taxpayer failed to state a claim upon which relief may granted because there are no allegations that any calculation pertaining to the tax year in question was in violation of the Hancock Amendment; (2) the allegations regarding the 1999 and 2000 tax rates were barred because they were untimely; (3) Taxpayer's claim was invalid because it was a collateral attack on properly established tax rates; and (4) Taxpayer's claim was barred by the doctrine of laches.

Taxpayer filed a motion for class certification. At the hearing on class certification, Scenic argued the wrong parties were named in this suit. Scenic argued it was not a political subdivision of the State of Missouri and that it had no taxing powers

and thus, was not a proper party to this suit. Taxpayer argued that Scenic had almost two years to assert this argument, but unnecessarily waited until the class certification hearing. Further, Taxpayer argued Scenic did not assert this argument when the same parties were named in a similar case, *Koehr I.*

On July 28, 2003, Scenic filed a motion to dismiss along with suggestions in support alleging Taxpayer named an improper party, failed to name an indispensable party, and failed to comply with the statute of limitations. In particular, Scenic argued it was not a political subdivision of the State of Missouri, rather it was a contractual entity without any authority to enter or levy any property taxes. Further, Scenic argued the statute of limitations ran for tax year 2001 and 2002, making it impossible to add the Franklin County Library District ("FCLD"), which was an indispensable party.

On August 13, 2003, Scenic filed a motion for leave to amend its answer to the second amended petition. In its original answer, Scenic had admitted it was a political subdivision and was authorized to and levied taxes for the year 2001. Scenic denied all of these allegations in its amended answer by interlineation.

On September 18, 2003, the trial court granted Scenic's motion to dismiss. It found that "the inclusion of a defendant [Scenic] which is not a political subdivision is clear on its face." Therefore, it had no subject matter jurisdiction with respect to Scenic. The trial court also found that Taxpayer had not requested that the court substitute the FCLD, the proper political subdivision, and that, in any case, FCLD could not be substituted because such a substitution would violate the statutory timely protest requirement. Further, the trial court dismissed with prejudice the

entire case regarding the 2001 tax rate because Taxpayer failed to comply with section 137.073.8 in filing the action.

Taxpayer filed a motion for new trial, arguing Scenic should have been barred by collateral estoppel and/or res judicata from challenging its role as a defendant; if Scenic was not a proper party, FCLD should have been substituted; and the case should not have been dismissed for failure to comply with section 137.073.8. The motion for new trial was denied, and this appeal followed.

■■■ Our standard of review when considering a trial court's grant of a motion to dismiss is *de novo*. *McCarthy v. Peterson*, 121 S.W.3d 240, 243 (Mo.App. E.D.2003). We can affirm the trial court's dismissal on any ground before the trial court in the motion to dismiss, even if that ground was not relied upon by the trial court in dismissing the claim. *Id.* We accept all of plaintiff's averments as true and view the allegations in the light most favorable to the plaintiff. *Id.*

Because Taxpayer's third and fourth points concern which entities are proper parties to this suit, we address them first.

In his third point on appeal, Taxpayer argues the trial court erred in dismissing Scenic Regional Library ("Scenic") because Scenic is barred by *res judicata* from challenging its status as a proper taxing authority.

■■■ A court may take judicial notice of its own records and may take judicial notice of the records of other cases when justice so requires. *Sher v. Chand*, 889 S.W.2d 79, 84 (Mo.App. E.D.1994).

■■■ *Res judicata*, commonly referred to as claim preclusion, bars the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties or those in privity with them.

*Lomax v. Sewell*, 50 S.W.3d 804, 809 (Mo. App. W.D.2001), *quoting Robin Farms, Inc. v. Beeler*, 991 S.W.2d 182, 185 (Mo. App. W.D.1999). *Res judicata* will bar a claim if the following elements are satisfied: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons or parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. *Lomax*, 50 S.W.3d at 809, *quoting Jordan v. Kansas City*, 929 S.W.2d 882, 886 (Mo.App. W.D.1996). The doctrine of *res judicata* renders conclusive a judgment in a subsequent action between the same parties as to all issues which might have been litigated, not only as to all issues tried. *Foster v. Foster*, 39 S.W.3d 523, 528 (Mo.App. E.D.2001). However, *res judicata* can only be applied where a final judgment on the merits has been rendered involving the same claim sought to be precluded in the cause in question. *Dodson v. City of Wentzville*, 133 S.W.3d 528, 538 (Mo.App. E.D.2004).

■■■ In this case, Scenic initially admitted that it was a political subdivision and was authorized to and did levy taxes for the year 2001. However, after filing its motion to dismiss because it was an improper party, Scenic amended its answer denying that it was a political subdivision and denying that it was authorized to and did levy taxes for the year 2001.

While parties exercising reasonable diligence might have argued the issue of whether Scenic was a proper party in the prior litigation dealing with similar issues, *res judicata* cannot bar a claim based on a different cause of action. None of the previous cases involved a cause of action based on the 2001 tax rates, which are the subject of this action and are the only tax rates from which Taxpayer seeks relief here. Thus, this case has a different cause of action, and an essential element of *res*

*judicata* is lacking.[3] Therefore, we find the trial court did not err in dismissing Scenic as a party to this litigation. Point denied.

In his fourth point on appeal, Taxpayer argues the trial court erred in dismissing his claims against Scenic and not substituting the FCLD.

Taxpayer contends the interests of justice required such a substitution because: (1) Scenic had held itself out as the proper taxing authority throughout over five years of tax rate litigation with various taxpayers; (2) the substitution of the FCLD would have cured the purported misidentification of Scenic without any prejudice to FCLD, which knew or should have known the nature of the action against Scenic; and (3) substantial hardship would befall Taxpayer and thousands of similarly-situated taxpayers absent the substitution.

 We will not convict the trial court of error for failing to take an action that was never requested. *U.S. Central Underwriters Agency v. Manchester Life and Cas.,* 952 S.W.2d 719, 723 (Mo.App. E.D. 1997); *see also State of Washington ex rel. Lewis v. Collis,* 963 S.W.2d 700, 704–05 (Mo.App. W.D.1998) (where our colleagues declined to act *sua sponte* to order a defendant's appearance or to appoint an attorney for defendant).

 At the hearing on the motion for class certification in this case, the trial court stated, after hearing arguments regarding whether Scenic or FCLD was the proper party, "... probably without making a suggestion to [Taxpayer's counsel],

why don't you figure out a way that we can at least get this into the position that we've got the right people named." There was also discussion at that hearing about the possibility of Taxpayer filing an amended petition naming FCLD and whether such an addition would be timely. However, Taxpayer never asked the trial court to make such a substitution. Because Taxpayer never asked the trial court to make such a substitution, we find no error in the trial court's failure to order such a substitution. Point denied.

Having determined the proper parties to this suit, we now address Taxpayer's first two points on appeal with respect to those parties.

In his first point on appeal, Taxpayer argues the trial court erred in dismissing his petition because section 137.073.8 does not govern the relief Taxpayer seeks under Article X, Section 23 of the Missouri Constitution.

Section 137.073.8 provides in pertinent part:

> Whenever a taxpayer has cause to believe that a taxing authority has not complied with the provisions of this section, the taxpayer may make a formal complaint with the prosecuting attorney of the county. Where the prosecuting attorney fails to bring an action within ten days of the filing of the complaint, the taxpayer may bring a civil action pursuant to this section and institute an action as representative of a class of all taxpayers within a taxing authority if the class is so numerous that joinder of all members is impracticable, if there are questions of law or fact common to

---

3. We note that collateral estoppel is inapplicable to this point because the distinction between collateral estoppel and res judicata is that collateral estoppel operates only as to issues previously litigated, but not as to matters not litigated in the prior action even if

they might have properly been determined. *Missouri Bd. of Pharmacy v. Tadrus,* 926 S.W.2d 132, 136 (Mo.App. W.D.1996). Clearly, the issue of whether Scenic is a proper party was not previously litigated.

the class, if the claims or defenses of the representative parties are typical of the claims or defenses of the class, and if the representative parties will fairly and adequately protect the interests of the class. Section 137.073.8.

Article X, Section 23 provides: "Notwithstanding other provisions of this constitution or other law, any taxpayer of the state, county or other political subdivision shall have standing to bring suit in a circuit court of proper venue and additionally, when the state is involved, in the Missouri supreme court, to enforce the provisions of sections 16 through 22, inclusive, of this article . . . ." Mo. Const., Art. X, Sec. 23.

Statutory construction is a question of law. *Beck v. Beck*, 90 S.W.3d 509, 511 (Mo.App. E.D.2002). When construing a statute, we attempt to ascertain the intent of the lawmakers by giving the words in the statute their plain and ordinary meaning. *Id.* Further, we are required to give each word, clause, and section meaning whenever possible. *Id.* Courts are not authorized to read into a statute a legislative intent that is contrary to the intent made evident by the plain and ordinary meaning of the language in the statute. *Id.* When construing a particular portion of a statute, we are to consider related clauses. *Martinez v. State*, 24 S.W.3d 10, 18 (Mo.App. E.D.2000).

Missouri courts have dealt with issues similar to those raised in this appeal in several recent cases. Although not reaching the issue in its main opinion, Judge Wolff wrote a concurring opinion in *Green v. Lebanon R–III School Dist.*, 13 S.W.3d 278, 286 (Mo.banc 2000) ("*Green I*") in which he found that in order to be eligible for tax refunds, taxpayers' lawsuits must

be timely filed under the statutory scheme.[4] Judge Wolff wrote that taxpayers' lawsuits had to be filed before the taxes became payable—December 31 of the tax year—in order to be eligible for a refund. *Id.* at 287. Section 23 of the Hancock Amendment is not a consent to a suit for money judgment. *Id.* However, taxpayers may seek an injunction to enjoin the collection of a tax until its constitutionality is finally determined, and if the tax is collected before a final determination as to its constitutionality, taxpayers' only remedy is a refund through a *timely* action. *Id.* See also *Ring v. Metropolitan St. Louis Sewer Dist.*, 969 S.W.2d 716, 718–19 (Mo. banc 1998).

In *Koehr I*, we adopted Judge Wolff's concurrence in *Green I* as a correct declaration of the law, finding that the petition, which was first filed on March 11, 1998 and later amended four times to included challenges to taxes from 1995–1998, was eventually determined to be either improper or untimely as to all of those years. *Koehr*, 55 S.W.3d at 863. We also noted that "the only civil action allowing taxpayers to challenge a tax levy contemplated by [section 137.073.8] is one for injunctive relief." *Id.* If such a suit for injunctive relief is timely initiated, section 137.073.9 provides for refunds of amounts erroneously paid regardless of whether taxes were paid under protest. *Id.*

About a year later, we held that once taxes, even those collected under an unconstitutional statute, have been paid, they can only be recovered through proper statutory proceedings. *Koehr v. Emmons*, 98 S.W.3d 580, 584 (Mo.App. E.D.2002) ("*Koehr II*"), *quoting Metts v. City of Pine Lawn*, 84 S.W.3d 106, 109 (Mo.App. E.D.

---

4. After the Supreme Court remanded this case, the trial court dismissed the action, finding it was untimely based on our opinion in *Koehr I*. The Southern District affirmed on appeal. *Green v. Lebanon R–III School Dist.*, 87 S.W.3d 365, 368 (Mo.App. S.D.2002) ("*Green II*").

2002). Further, this statutory procedure applies to taxes challenged as a violation of the Hancock Amendment. *Koehr,* 98 S.W.3d at 584. We concluded that the failure to timely protest the payment of taxes alleged to be unconstitutional and to timely commence an action for the refund of those taxes is fatal, even if the challenge is based on the Hancock Amendment.[5] *Id.*

We distinguished *Koehr II* from *City of Hazelwood v. Peterson,* 48 S.W.3d 36 (Mo. banc 2001) because *Koehr II* concerned a procedural question about the timeliness of filing the action where the remedy sought is a tax refund; in contrast, *City of Hazelwood* involved "whether the Hancock Amendment must be read in conjunction with the election laws of the state in order to determine whether a tax increase is constitutional." *Koehr v. Emmons,* 98 S.W.3d 580, 583 (Mo.App. E.D.2002). Unlike in *Koehr II* and *Koehr I,* the taxpayers in *City of Hazelwood* timely filed suit for the disputed amount. *Id.*

The issue in *City of Hazelwood* was whether the City of Hazelwood could proceed with a class action suit for a tax refund. Initially, the plaintiffs in *City of Hazelwood* filed suit individually to recover excess payments made while the election contest was pending in court. *City of Hazelwood,* 48 S.W.3d at 38. The trial court "certified a class consisting of all persons who paid property taxes to the District during 1996 and ordered that the claims of the individual plaintiffs be maintained as a class action." *Id. City of Hazelwood,* relying on the Supreme Court's opinion in *Ring* and the Hancock Amendment, held merely that taxpayers could proceed, under the Hancock Amendment, in the class action suit for a tax refund that was initiated by the trial court. *Id.* at

41. *City of Hazelwood* did not involve a question of whether the tax rate was proper. *Id.* at 38. The essential question was not whether the taxing authority complied or had to comply with chapter 137, but whether the taxing authority had the right to retain taxes collected after the first election until the second election.[6] *Id.*

In this case, we are faced with a procedural issue that is not directly addressed by *City of Hazelwood* or *Koehr II.* The question here is whether, under section 137.073.8, the failure to file a complaint with the prosecutor before initiating an action seeking a refund is fatal to the action under the Hancock Amendment. We find that because section 137.073.8 determines the manner in which Taxpayer may challenge the tax rate when seeking a refund, this case is most similar to the line of cases dealing with the procedural question of timeliness, *i.e., Green I* and *II, Koehr I* and *II,* and *Metts.*

 Keeping in mind our rules of statutory construction, we find that section 137.073.8's use of the word "may" in describing when a taxpayer can bring a suit merely indicates that it is not mandatory that a taxpayer challenge the taxing authorities' alleged non-compliance. After considering the interrelated clauses of section 137.073.8, we find that where a taxpayer chooses to challenge the taxing authority, the taxpayer must first file a complaint with the prosecutor and only after the prosecutor fails to act on the complaint may the taxpayer institute an action as representative of a class of all taxpayers. In Judge Wolff's concurring opinion in *Green I,* he explained that the reason for the procedural requirement of section 137.073.8 was so that "the pendency of the action puts the taxing au-

---

5. In *Koehr II,* taxpayers did not plead injunctive relief. *Koehr,* 98 S.W.3d at 584.

6. The first election was set aside because of an irregularity in the ballots.

thority on notice of the challenge to its tax rate brought on behalf of all taxpayers," dispensing with the need for individual taxpayer's to timely protest their taxes. *Green*, 13 S.W.3d at 288. Therefore, the trial court did not err in finding that in so far as it sought a refund of any excess taxes paid, the Taxpayer's suit was procedurally barred because he did not first file a complaint with the prosecutor as section 137.073.8 requires.[7]

In a sub-argument under his first point on appeal, Taxpayer argues the trial court erred in dismissing his petition because section 137.073.8 violates the "open courts" provision of the Missouri Constitution.

Attacks on the constitutionality of a statute are of such importance that the record regarding such issues should be fully developed and not raised as an afterthought in a post-trial motion or on appeal. *Hollis v. Blevins*, 926 S.W.2d 683, 684 (Mo.banc 1996), *quoting Land Clearance for Redev. v. Kansas Univ.*, 805 S.W.2d 173, 176 (Mo.banc 1991). Unless constitutional issues are raised at the earliest possible opportunity consistent with orderly procedure, they are waived. *Id.* at 683.

Taxpayer raises his claim that 137.073.8 violates the "open courts" provision of the Missouri Constitution for the first time on appeal. Taxpayer did not raise this claim in his motion for new trial, which would have been the proper time to raise such a claim. As a result, this issue was waived, and we cannot address it. Point denied.

In his second point on appeal, Taxpayer argues the trial court erred in dismissing his petition because even if 137.073.8 does apply, Taxpayer is still entitled to seek a tax refund through enforcement of the 1999 judgment as well as a declaratory judgment and injunctive relief under both the Hancock Amendment and the 1999 judgment.

As noted in *Koehr II*, there are two ways in which a taxpayer can enforce the rights provided by the Hancock Amendment: 1) a taxpayer can seek an injunction, enjoining the collection of the tax until its constitutionality is determined; and 2) a taxpayer may seek a refund through a timely action if the tax increase violates the Hancock Amendment and is collected before a final judicial approval of the collection of the increase without voter approval. *Koehr*, 98 S.W.3d at 583.

However, whether to allow actions for injunctions and declaratory relief where a refund is not a possibility is another question. Other than the provision authorizing attorney's fees, the enforcement provision of the Hancock Amendment, section 23, is not a consent to a suit for a money judgment. *Koehr*, 55 S.W.3d at 863. If an injunctive action is timely instituted according to section 137.073.8, section 137.073.9 provides for refunds of amounts erroneously collected regardless of whether these amounts were paid under protest. *Id.* at 863. However, section 137.073.9 limits the eligibility for refunds by stating that nothing in the law "shall be construed to require a taxing authority to refund any tax erroneously paid prior to or during the third tax year preceding the current tax year." Section 137.073.9. Judge Wolff explained this provision in his concurrence in *Green I*, stating "... this section, just quoted, sets a time limit for when the judicial action is to be completed. It is not a statute of limitations, nor does it enable lawsuits to be commenced years after the tax year in question. Taxes erroneously collected are not subject to refund without specific statutory authority, and the statute can and does set a specific limitation."

---

**7.** This holding applies only to Taxpayer's remedies under section 137.073.

*Green*, 13 S.W.3d at 290; *see also Koehr*, 55 S.W.3d at 863.

Because the 2001 taxes are at issue, it is clear that Taxpayer is not eligible for a refund under section 137.073.9 because, as discussed in the previous point on appeal, his action was not filed in accordance with section 137.073.8. Further, the 2001 taxes would have been paid prior to the third tax year preceding the current tax year. However, we can find no barrier to Taxpayer's pursuit of an action for declaratory relief and for an injunction ensuring the alleged unlawful tax rates and methods of determining such tax rates do not remain in effect in the future. Therefore, we reverse the trial court's dismissal and allow Taxpayer to proceed on his claims for declaratory and injunctive relief. Point granted.

Based on the foregoing, we affirm in part and reverse in part the judgment of the trial court.

GEORGE W. DRAPER III, C.J., and SHERRI B. SULLIVAN, J., concur.