**Larry L. GRIMES, Appellant,**

v.

**CITY OF TARKIO, Missouri, et al., Respondents.**

**No. WD 67953.**

Missouri Court of Appeals,
Western District.

Jan. 22, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 2008.

Brian J. Klopfenstein, Kearney, MO, for Appellant.

Kristen B. Roubal, Springfield, MO, for Respondent.

Before: HARDWICK, P.J., SMART, JJ. and WITT, Sp.J.

GARY WITT, Special Judge.

Larry Grimes (Appellant) appeals the trial court's grant of summary judgment in favor of the City of Tarkio (City); Nick White (Mayor); and city council members Marvin Southard, Jackie Aeschliman, Donald Noland, and Janice Beneda (collectively "Respondents"). Appellant claims that he was wrongfully discharged from his position as chief of police after he filed a complaint against the Mayor with the Missouri Ethics Commission (Commission) alleging that the Mayor improperly interfered with a police investigation. The trial court found that the Appellant failed to allege that Respondents violated any specific constitutional provision, statute, regulation, or clear mandate of public policy and granted summary judgment to Respondents.

In his sole point on appeal, Appellant asserts that the trial court's grant of summary judgment was improper in that: (1) there were material facts in dispute regarding the termination; and (2) he was entitled to whistleblower protection because the Mayor violated a clear public policy favoring the investigation and prosecution of criminal offenses. For the reasons stated below, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was hired as a police officer for the City of Tarkio in 1998. He was promoted to Chief of Police in 2003. On May 1, 2003, the Tarkio police attempted to arrest Eric Livengood for driving while intoxicated. An altercation ensued and the police were forced to use pepper spray and nightsticks to subdue Livengood; two officers were injured in the process.[1]

Shortly after the arrest, the Mayor contacted the police department and said he had "settled" the case. Under the settlement, Livengood would pay $3,000 to the City for the purchase of equipment and waive any right to sue the City for damages arising from his arrest. In exchange, the City would not pursue criminal charges against Livengood. A written "settlement" was prepared and was signed by Livengood, the Mayor, and the two injured police officers. What appears to be Appellant's signature also appears on the document, but there is evidence this was a forgery. It is unclear who forged Appellant's signature. Appellant did not consult the County prosecutor or the city prosecutor regarding the filing of charges against Livengood.

Almost two years later, on March 9, 2005, Appellant filed a complaint with the Commission against the Mayor regarding the Livengood incident. Shortly after the complaint was filed, Appellant ceased all communication with the Mayor and stopped attending city council meetings. On June 3, 2005, the Commission notified Appellant that the complaint had been dismissed and that they found the Mayor had acted within his statutory authority to grant reprieves and pardons under Section 79.220.[2]

Shortly thereafter, on June 14, 2005, the City terminated Appellant's employment. The four-member city council's two-two vote on the proposed termination was broken by the Mayor, who voted in favor of termination. Appellant testified that the two council members who voted against termination stated that Appellant's termination arose from the ethics complaint he filed against the Mayor.[3] The Mayor tes-

1. Appellant was not involved in the arrest of Livengood.

2. All statutory references are to RSMo 2000.

3. The two city council members denied making the statements to Appellant.

tified that he had no knowledge of who had filed the complaint against him at the time he voted to fire the Appellant.

In September of 2005, Appellant filed suit against the Respondents for wrongful discharge alleging that he was entitled to whistleblower protection. The trial court granted summary judgment in favor of the Respondents. This appeal followed.

## II. STANDARD OF REVIEW

Review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The nonmoving party is given the benefit of all reasonable inferences. *Id.* "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380.

## III. DISCUSSION

■ Appellant acknowledges that he was an at-will employee of the City. "In this state an at-will employee may be discharged for cause or without cause." *Duncan v. Creve Coeur Fire Prot. Dist.*, 802 S.W.2d 205, 206 (Mo.App. E.D.1991). Missouri recognizes a narrow public policy exception to the employment-at-will doctrine, holding an employer who discharges an employee in violation of a clear mandate of public policy to be liable for wrongful discharge. *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859, 871 (Mo.App. W.D.1985). Appellant argues that his complaint to the Commission regarding the Mayor's actions in the Livengood incident entitled Appellant to "whistleblower" status, and, consequently, his termination violated the public policy favoring the investigation and prosecution of criminal offenses.

■ Missouri recognizes an action against an employer-city for wrongful termination under a whistleblower claim.

*Kunzie v. City of Olivette*, 184 S.W.3d 570 (Mo. banc 2006). In order to prevail on his whistleblower claim, Appellant must prove: (1) he reported serious misconduct that constitutes a violation of the law, or of well established and clearly mandated public policy, to his superiors or third parties; (2) Respondent discharged him; and (3) there exists an exclusive causal connection between his discharge and the violation that he reported. *Bell v. Dynamite Foods*, 969 S.W.2d 847, 852 (Mo.App. E.D. 1998). The reported action must be a violation of a constitutional provision, statute, regulation, or other clear mandate of public policy. *Porter v. Reardon Mach. Co.*, 962 S.W.2d 932, 938 (Mo.App. W.D. 1998). In order to proceed on his claim, Appellant must plead with particularity the public policy Respondents' action allegedly violated. *Adolphsen v. Hallmark Cards, Inc.*, 907 S.W.2d 333, 338 (Mo.App. W.D.1995).

Appellant's petition alleges that the Respondents violated his rights under the Missouri Constitution in that the Appellant had the right to be free from wrongful termination when he filed his complaint with the Commission. Under Count II he alleges that the Mayor fired him for exercising his constitutional rights to free speech by reporting the Mayor's conduct to the Commission. Nevertheless, Appellant failed to plead with the required particularity the constitutional provision, statute, or regulation that was violated by Respondents' action. Rather, Appellant generally alleges that his termination violated the overarching public policy of proceeding with criminal investigations.

■ In order to prevail on a whistleblower claim, the specific facts giving rise to liability must be plead with particularity. *Sivigliano v. Harrah's N. Kansas City Corp.*, 188 S.W.3d 46, 49 (Mo.App.

W.D.2006). Although Appellant was twice granted leave to file amended petitions, he failed to specify the legal provision that the Respondents violated and demonstrate that such action was a violation of a clear mandate of public policy. Appellant's petition failed to demonstrate a cause for relief; therefore, summary judgment was proper. *Porter*, 962 S.W.2d at 940.

Judgment affirmed.

All concur.