Evelyn B. TOPPS, Appellant,

v.

CITY OF COUNTRY CLUB HILLS,
Missouri, Respondent.

No. ED 91509.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 18, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 29, 2008.

Application for Transfer Denied
Jan. 27, 2009.

Donald Murano, The Murano Law Firm, LLC, St. Louis, for Appellant.

Priscilla F. Gunn, Rabbitt, Pitzer & Snodgrass, P.C., St. Louis, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Evelyn Topps (Topps) appeals from the trial court's second order granting a motion for summary judgment in favor of the City of Country Club Hills (the City), after this Court, in *Topps v. City of Country Club Hills (Topps I),* 236 S.W.3d 660 (Mo. App. E.D.2007), reversed and remanded the trial court's first summary judgment order. We affirm.

### Background

We review the facts in the light most favorable to Topps, as the party against whom summary judgment was entered. *City of Hazelwood v. Peterson,* 48 S.W.3d 36, 38 (Mo. banc 2001). Topps was an at-will employee with the City from May 21, 2001, through April 2, 2004, when she voluntarily resigned her position as City Clerk. Topps alleges she experienced whistle blower retaliation after reporting alleged "inappropriate and unethical business practices and violations of policies and procedures" by the City. *Topps I,* 236 S.W.3d at 660–61. Topps asserts she was then "forced to resign" and was "constructively terminated" when she left her position. During Topps' employment, the City participated in the Missouri Public Entity Risk Management (MOPERM) fund [1] for its insurance coverage.

The MOPERM "Memorandum of Coverage" sets forth the coverage provided, as well as applicable exceptions. Section I, Part A of the "Memorandum of Coverage" sets forth the insurance coverage provided to the City. Part A(1) of the policy states that

> For claims on causes of action established by Missouri Law, MOPERM will pay on behalf of [the City] the ultimate net loss which [the City] shall become legally obligated to pay by reason of liability arising out of: ... (a) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motorized vehicles within the course of their employment ... [and] (b) Injuries caused by the condition of a public entity's property if ... the property was in dangerous condition at the time of the injury .... [2]

Part A(2) of the policy provides coverage for "claims against [the City] on causes of actions other than those established by Missouri Law and for claims against public officials and employees."

A disclaimer section also is included in the language of the policy in Section I, of the "Memorandum of Coverage," noting that

> Nothing contained in this section, or the balance of this document, shall be construed to broaden the liability of [the City] beyond the provisions of sections 537.600 to 537.610 of the Missouri Statutes [the sovereign immunity sections], nor to abolish or waive any defense at law which might otherwise be available to [the City] or its officers and employees.

Section IV of the "Memorandum of Coverage" sets forth policy exclusions, though

---

1. MOPERM is a public entity risk management fund established by the state legislature. Section 537.700 RSMo (2000). "All public entities in Missouri shall have the option of participating in the fund" and "[p]articipation in the fund has the same effect as purchase of insurance by the public entity, as otherwise provided by law." Section 537.705 RSMo (2000).

2. The Court notes this language closely mirrors the exceptions to sovereign immunity set forth in Section 537.600 RSMo (2000).

nothing is mentioned in this section about whistle blower claims.

The MOPERM policy also contains a "Declarations" page, which notes "Employment Practice Liability" (EPL) coverage with a $10,000 deductible and limits of $2,000,000 per occurrence. While EPL is listed under "Coverage" on the "Declarations" page, EPL is not defined in the "Memorandum of Coverage."

Topps filed suit against the City on October 18, 2005, alleging whistle blower retaliation in Count I and disability discrimination in Count II. After Topps dismissed her count for disability discrimination, the City filed a motion for summary judgment on the remaining whistle blower retaliation count, alleging the City was entitled to sovereign immunity. Topps opposed the City's motion for summary judgment, arguing the City's MOPERM coverage applies to her lawsuit and that the City's procurement of that coverage waived the City's sovereign immunity to the extent of that coverage, pursuant to *Kunzie v. City of Olivette,* 184 S.W.3d 570 (Mo. banc 2006). The trial court granted the City's motion for summary judgment, noting, "The Court finds that this is a whistle blower case, and [the City] is entitled to sovereign immunity pursuant to [Section] 537.600. *Kunzie v. City of Olivette.* [The City] did not waive sovereign immunity through its purchase of a MOPERM policy."

Topps appealed to this Court, which reversed and remanded the grant of summary judgment in *Topps I.* Relying on *Kunzie,* this Court found that there was "an insufficient factual record regarding [MOPERM] coverage such that it [could not] be determined as a matter of law that [the City was] due judgment." *Topps I,* 236 S.W.3d at 663. The case was remanded "for a factual determination as to the effect of the MOPERM policy." *Id.*

The case returned to the trial court where both parties provided Proposed Findings of Fact. The trial court again granted the City's motion for summary judgment on June 11, 2008. The trial court's order granting summary judgment in favor of the City set forth both findings of fact and conclusions of law, and was substantially longer and more detailed than the first order of summary judgment. The trial court's findings of fact and conclusions of law analyzed and interpreted the MOPERM policy to determine whether the policy's language constituted a waiver of the City's sovereign immunity. First, relying on several cases and the express disclaimer language found in the MOPERM "Memorandum of Coverage," the trial court determined that the City did not waive sovereign immunity when it purchased insurance coverage through MOPERM. Second, the trial court found that, even absent the disclaimer language in the policy, the City still did not waive sovereign immunity by participating in MOPERM because the Missouri General Assembly specifically mandated in Section 537.745.1 that MOPERM coverage does not waive sovereign immunity. Finally, the trial court concluded that the language of the MOPERM coverage did not provide coverage for whistle blower claims within the parameters of coverage, and thus, again, the City did not waive sovereign immunity.

This appeal follows.

### Point on Appeal

In her only point on appeal, Topps alleges that the trial court erred in granting summary judgment in favor of the City because it improperly viewed the record in the light most favorable to the moving party, instead of the non-moving party, and failed to analyze the insurance policy

coverage as mandated by this Court in *Topps I.*

### Standard of Review

As we noted in *Topps I,* "[t]he standard of review on appeal regarding summary judgment is de novo." *Topps I,* 236 S.W.3d at 660, *citing City of Hazelwood v. Peterson,* 48 S.W.3d 36, 38 (Mo. banc 2001). Summary judgment is proper and will be upheld on appeal only when this Court finds there is "no genuine dispute of material fact" and the movant is "entitled to judgment as a matter of law." *Id.* We review the record "in the light most favorable to the party against whom summary judgment was entered." *Id.* "We take as true the facts set forth by affidavits or otherwise in support of the moving party's summary judgment motion unless contradicted by the non-moving party's response to the motion and accord the non-moving party the benefit of all reasonable inferences from the record." *Parish v. Novus Equities Co.,* 231 S.W.3d 236, 244 (Mo.App. E.D.2007).

### Discussion

██ Traditionally, under the common law, "only the State and its entities were entitled to complete sovereign immunity from all tort liability." *Junior Coll. Dist. of St. Louis v. City of St. Louis,* 149 S.W.3d 442, 447 (Mo. banc 2004). "Sovereign immunity does not necessarily describe the immunity held by municipalities because municipalities, as distinguished from other governmental entities, exercise both governmental and proprietary functions." *Parish,* 231 S.W.3d at 241. Municipalities have traditionally had immunity with regard to actions they undertake as a part of their "governmental functions— actions benefiting the general public." *Junior Coll. Dist. of St. Louis,* 149 S.W.3d at 447. On the other hand, municipalities do not enjoy sovereign immunity for torts committed "while performing proprietary functions—actions benefiting or profiting the municipality in its corporate capacity." *Kunzie,* 184 S.W.3d at 574. The Missouri Supreme Court "has held that termination of a city employee is a governmental function," and thus sovereign immunity applies. *Id.*

### I. Waiver of Sovereign Immunity

██ While sovereign immunity typically protects municipalities from actions taken as part of their governmental functions, specific exceptions to sovereign immunity can apply, and a municipality can specifically waive its immunity.[3] *Id.*; *Parish,* 231 S.W.3d at 242. Section 537.600 sets forth two such specific exceptions to sovereign immunity: (1) where injuries result from a public employee's negligent operation of a motor vehicle within the course of employment; and (2) where injuries are caused by a dangerous condition of the municipality's property. *See also Parish,* 231 S.W.3d at 242.

With particular application to the case before us, Section 537.610 provides that sovereign immunity may also be waived by the purchase of insurance covering tort claims. *See also* Section 71.185; *Epps v. The City of Pine Lawn,* 353 F.3d 588 (8th Cir.2003). Notably, this section mandates the waiver of sovereign immunity "only to the maximum amount of and only for the

---

**3.** Municipalities are "entitled to sovereign immunity from tort claims arising out of its performance of governmental functions unless: 1) the claimed injuries arose from an automobile accident in which public employees are involved; 2) the claimed injuries arose from the existence of a dangerous condition on public property; or 3) under certain circumstances, the municipal corporation has waived sovereign immunity by purchasing liability insurance." *Parish,* 231 S.W.3d at 245.

purposes covered by such policy of insurance." Section 537.610; *Kunzie*, 184 S.W.3d at 574.

 Section 537.610 "provides an independent basis for waiving sovereign immunity that is cemented in the existence of coverage for the damage or injury at issue under the language of the insurance policy, and we will construe narrowly any such waiver of sovereign immunity." *Parish*, 231 S.W.3d at 246. Although Section 537.610 provides for the waiver of sovereign immunity by operation of law upon the purchase of insurance by a municipality, the extent of that waiver is expressly dictated, and limited, by the terms of the insurance policy. *See Hummel v. St. Charles City R–3 School Dist.*, 114 S.W.3d 282, 284 (Mo.App. E.D.2003) ("Whether sovereign immunity is waived in a particular case depends on whether the plaintiff's claim falls within the purposes covered by the defendant's policy"). Because "finding a municipality liable for torts is the exception to the general rule of sovereign immunity, [ ] a plaintiff must plead with specificity facts demonstrating his claim falls within an exception to sovereign immunity." *Parish*, 231 S.W.3d at 242. The plaintiff shoulders the burden of proving the existence of an insurance policy, and that the terms of the policy cover the claims asserted by the plaintiff against the municipality. *Id.* at 246; *Hummel*, 114 S.W.3d at 284 ("[T]o perpetrate a claim of immunity under section 537.610.1, a plaintiff is required to demonstrate the existence of insurance and that it covered the plaintiff's claim.")

Topps' appeal is premised entirely upon whether the City has waived sovereign immunity for the claims she asserts against the City. The existence of a waiver depends entirely upon whether her whistle blower claim falls within the purposes covered by the City's MOPERM policy. *See*

*Epps*, 353 F.3d at 594. If the insurance coverage obtained by the City contains such coverage, then the City has waived its sovereign immunity and summary judgment is improper. *See Kunzie*, 184 S.W.3d at 574 ("If the city maintains insurance that covers these types of claims, then it will have waived its immunity under [S]ection 537.610 for the specific purpose of and to the extent of its insurance coverage") On the other hand, if the MOPERM policy does not provide coverage for whistle blower claims, then sovereign immunity applies and summary judgment is appropriate.

*A. Policy Language Does Not Cover Whistle Blower Retaliation Claims*

 Topps first argues that the failure to list whistle blower claims as a specific exclusion to coverage and the inclusion of "Employment Practice Liability" coverage on the "Declarations" page of the MOPERM policy necessitates a finding that the policy covers her whistle blower claim. Topps argues that the insurance coverage was broad and that the specific mention of "Employment Practice Coverage" necessitates coverage for whistle blower claims. Topps further argues that because the MOPERM policy does not contain the term "sovereign immunity," the policy cannot be interpreted to waive sovereign immunity. Lastly, Topps suggests that the inclusion of a coverage provision for "Employment Practices Coverage," when coupled with the express failure of the policy to reference "sovereign immunity" or "whistle blower claims" creates an ambiguity that must be construed against the drafter under a standard contract interpretation analysis. We disagree.

In reviewing Topps' claims, we are guided by the policy language alone. *See Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 522 (Mo.App. W.D.2007) ("In interpreting a contract, the plain, ordinary,

and usual meaning of a contract's words are used, and the whole document is considered."); *Langley v. Curators of the Univ. of Mo.*, 73 S.W.3d 808, 812 (Mo.App. W.D.2002). We must examine whether the inclusion of "Employment Practice Liability" coverage in the MOPERM policy can be reconciled with the trial court's finding that whistle blower retaliation claims are not covered under the policy. We have reviewed the terms of the MOPERM policy and record before us and find no ambiguity. When reviewing all of the terms of the policy, we find that the absence of the terms "sovereign immunity" and "whistle blower" in the policy does not compel a finding of ambiguity with regard to the terms of coverage. Moreover, we find that the policy language providing the City with insurance coverage for "Employment Practice Liability" can be reconciled harmoniously with the policy language excluding coverage for Topps' whistle blower claim.

 "Whether a contract is ambiguous is a question of law." *Klonoski v. Cardiovascular Consultants of Cape Girardeau, Inc.*, 171 S.W.3d 70, 72 (Mo.App. E.D.2005). A trial court "must consider the whole instrument and the natural and ordinary meaning of the language" when determining whether a contract is ambiguous. *Id.* at 72–73. A contract is only ambiguous if "the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person." *Id.* at 73; *Kelly*, 218 S.W.3d at 522. Whether a contract is ambiguous and the interpretation of the contract itself are issues of law that we review de novo. *Kelly*, 218 S.W.3d at 522. The interpretation of an insurance policy, is likewise, a question of law. *Langley*, 73 S.W.3d at 812. When we interpret insurance policies, "we apply the rules applicable to contract construction." *Id.* "When construing the language of an insurance contract, we construe the policy and the endorsements thereon as one contract and, if possible, give effect to each and every provision thereof." *Id.*

 Examining the specific policy provisions, Section I, Part A(1) of the policy sets forth the coverage provided to the City "for claims on causes of action established by Missouri Law." Topps' whistle blower claim is based on Missouri Law.[4] The only "claims on causes of action established by Missouri Law," which are covered under the MOPERM policy, are those claims arising out of injuries resulting from the operation of motor vehicles or dangerous conditions of property.[5] Given the plain and clear language of Section I, Part A(1) of the MOPERM policy, the policy does not provide insurance coverage to the City for employee whistle blower

---

4. While typically an at-will employee may be discharged with or without cause, "Missouri recognizes a narrow public policy exception to the employment-at-will doctrine, holding an employer who discharges an employee in violation of a clear mandate of public policy to be liable for wrongful discharge." *Grimes v. City of Tarkio*, 246 S.W.3d 533, 536 (Mo. App. W.D.2008). "Missouri recognizes an action against an employer-city for wrongful termination under a whistleblower claim." *Id.*

5. Examining the language of this section, it appears clear the MOPERM policy was drafted to cover specifically only those types of claims to which sovereign immunity does not apply under Section 537.600, as the language in this section of the policy mirrors the language of the statute exactly. *See Mantle v. City of Country Club Hills*, 2008 WL 3853432, *6 (E.D.Mo.2008) ("This portion of the policy certainly indicates to the Court that the policy was intended to provide coverage only for those two specific instances where sovereign immunity had been statutorily waived.")

claims, as such claims do not involve the operation of motor vehicles or the dangerous conditions of property.

Likewise, Section I, Part A(2) of the MOPERM policy does not provide the City insurance coverage for a whistle blower retaliation claim because Part A(2) provides the City coverage only for claims on "causes of action other than those established by Missouri Law and for claims against public officials and employees." Topps' claim is premised on Missouri law, and her claims are brought only against the City, and not against any public official or employee. Accordingly, her claim is not covered under this section either.

While Section I, Part A(2) does provide coverage to the City for the "Employment Practices Liability" mentioned in the "Declarations" page, such coverage applies only to those claims that are not established under Missouri law. Topps argues that providing coverage for "Employment Practices Liability" claims is inconsistent with the denial of coverage for employee whistle blower claims, rendering the MOPERM policy ambiguous, and dictating our construction of the policy in favor of extending coverage. Topps' argument presupposes that the policy language relating to "Employment Practices Liability," and the statutory exclusions provided under the policy, cannot be read in harmony. Contrary to Topps' suggestion, the policy language is not "reasonably susceptible to more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person." *Klonoski,* 171 S.W.3d at 73; *Kelly,* 218 S.W.3d at 522.

Topps' interpretation of the "Employment Practices Liability" language requires an assumption that the City is subject only to employment claims established under state law. Only with this narrow construction can we find conflict between

the MOPERM "Declarations" page providing coverage for "Employment Practices Liability," and Section I, Part A(1) providing coverage only for state claims stemming from the operation of motor vehicles or the dangerous condition of property. However, not all employment claims to which the City is potentially liable are established by state law. Employment claims "other than those established by Missouri law" are covered under the "Employment Practices Liability" provisions of the MOPERM policy. Specifically, employment claims that arise under the federal statutory scheme or the United States Constitution are covered by the policy. Nothing in the policy language or in the record before us dictates or otherwise supports such a narrow and constrained interpretation of the MOPERM policy. To the contrary, we find that the plain and clear language of the insurance coverage extended under the policy does not insure the City for any of its governmental functions except those involving the operation of motor vehicles or the dangerous condition of property. Topps has not provided any language in the policy that specifically allows for coverage of her whistle blower claim.

*B. Disclaimer Language Precludes Coverage*

Not only is the MOPERM policy devoid of affirmative language indicating Topps' whistle blower claim is covered, but the policy expressly includes disclaimer language that reserves the City's sovereign immunity. Section I of the "Memorandum of Coverage" clearly states that the policy should not be construed to broaden the liability of the City beyond the sovereign immunity provisions of Sections 537.600 to 537.610, nor "to abolish or waive any defense at law which might otherwise be

available" to the City.[6] Because a number of courts have held that "a public entity retains its full sovereign immunity when the insurance policy contains a disclaimer stating that the entity's procurement of the policy was not meant to constitute a waiver of sovereign immunity," the disclaimer provision in the City's MOPERM policy acts to retain the City's sovereign immunity. *Parish*, 231 S.W.3d at 246; *See also State ex rel. Bd. of Trustees of City of North Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 360 (Mo. banc 1992); *Conway v. St. Louis County*, 254 S.W.3d 159, 167 (Mo.App. E.D.2008); *Langley*, 73 S.W.3d at 811 ("A public entity does not waive its sovereign immunity by maintaining an insurance policy where that policy includes a provision stating that the policy is not meant to constitute a waiver of sovereign immunity") While Topps argued in her brief and at oral argument that the policy does not contain any mention of the words "sovereign immunity," we find this argument unpersuasive as the policy clearly references Sections 537.600 and 537.610, the statutes creating sovereign immunity.

*C. Lack of Exclusions Does Not Provide Coverage for Whistle Blower Claims*

Topps next argues that because whistle blower claims are not listed as an express exclusion in the MOPERM "Memorandum of Coverage," the policy therefore provides coverage for those claims. We do not reach the same conclusion. Not only would it be impractical to require MOPERM, or any other insurer, to affirmatively list every possible claim not covered under its policy of insurance as "exclusions," in this case such a listing is patently unnecessary because there are no

indications in the MOPERM policy that potentially could provide coverage for an employee whistle blower retaliation claim, and the general disclaimer of coverage for claims established by state law operates as an exclusion despite any specific reference to whistle blower claims. Because there are no provisions within the MOPERM policy to potentially create liability for an employee whistle blower claim, there is no need for a provision excluding those claims.

*D. Extrinsic Evidence Does Not Provide Basis for Liability*

Topps alleges that MOPERM's use of the term "broad" in a PowerPoint presentation to the City when describing the extent of the claims' coverage somehow leads to the conclusion that the City waived its sovereign immunity as to employee whistle blower claim. Again, we are guided solely by the language of the policy. When interpreting a contract, the whole document is considered and "the plain, ordinary, and usual meaning of [the] contract's words are used." *Kelly*, 218 S.W.3d at 522. "[E]xtrinsic evidence cannot be used to create an ambiguity." *Id.* We find no ambiguity in the policy, and thus do not look to extrinsic evidence to interpret the provisions of the policy.

*II. Trial Court's Adoption of the City's Facts Was Not Improper*

Finally, Topps argues that the trial court erred because it failed to analyze the MOPERM insurance contract as ordered by this Court in *Topps I* when it granted the City's motion for summary judgment following remand. Topps argues that the trial court did not make a

---

**6.** Citing identical disclaimer language from the MOPERM policy, the District Court in *Grospitz v. Abbott*, 2005 WL 2649707, *8 (W.D.Mo.2005), found "Missouri courts interpret this language in the MOPERM policy to limit the public entity's liability coverage to only those claims involving the operation of a motor vehicle or the dangerous conditions of public property." *Citing Moses v. County of Jefferson*, 910 S.W.2d 735, 736 (Mo.App. E.D. 1995).

single reference to her assertions of fact, and copied verbatim eight pages of the City's proposed findings of facts and law. While our review of the record supports Topps' claim that the trial court adopted the City's proposed findings of facts and law, we do not agree with Topps' suggestion that this fact somehow taints the trial court's "Findings of Fact, Conclusions of Law and Judgment," or suggests that the trial court did not undertake its own analysis of the MOPERM policy as directed by this Court in *Topps I.* Although Topps disagrees with the trial court's conclusions, she presents no proof, or even allegations, that the trial court's findings were inaccurate, were not supported by the record, or were disputed. We find nothing improper or inappropriate when, after independently reviewing the facts and law at issue, a trial court adopts a party's proposed findings of fact and law with which it agrees. We doubt that Topps would have seen anything unseemly had the trial court, after thoughtful reflection, adopted her proposed findings and conclusions of law. Not only is this argument without merit, but we find it disingenuous.

### Conclusion

For these reasons, we find that there is no genuine issue of material fact, and that the City is entitled to judgment as a matter of law because it is protected against employee whistle blower claims by the sovereign immunity it enjoys. The record is clear that the City's MOPERM policy does not contain coverage for whistle blower retaliation claims, such as the claim filed by Topps. Accordingly, sovereign immunity applies to her claim and summary judgment is appropriate. The law leaves us no alternative.

Despite this finding, we are sympathetic to and understand the precarious position that well-intentioned and law-abiding municipal employees may face in cases involving whistle blower retaliation. In our society we encourage and protect employees who stand up and report wrongdoing and illegal activities. We do so because our system of laws dictates that it is contrary to good public policy to punish employees who have championed what is right and have reported wrongdoings. Because of the sovereign immunity protection afforded to municipalities, municipal employees find themselves in a precarious and threatening situation, which creates a very real potential for abuse by municipal governments. Municipal employees who have genuine concerns about the legality and propriety of their employer's acts know that, if they report the alleged wrongdoings, they risk losing their jobs and have no recourse. They are "second-class" employees with fewer rights and protections than employees in the private sector. We do not suggest, nor do we mean to suggest, that our institutions of government systematically engage in unethical or illegal conduct that must be subject to the oversight of its employees. However, human nature being what it is, we fear that the threat of abuse in individual circumstances is real, and that our system of government would benefit from a policy that excludes whistle blower retaliation claims from the protection of sovereign immunity. Despite these concerns, we are constrained by the very clear law and the four corners of the MOPERM policy at issue. Any change in the application of sovereign immunity to whistle blower retaliation claims must come from the legislature.

The trial court did not err in granting the City's motion for summary judgment. The judgment of the trial court is affirmed.

GLENN A. NORTON and PATRICIA L. COHEN, JJ., Concur.